**UNITED STATES of America, Appellee,**

v.

**Paul J. REINDEAU, Steven Arthur Mitchell, Jr. and Billy Joe Kennedy, Defendants–Appellants.**

**Nos. 645, 863 and 672, Dockets 90–1460, 90–1461 and 90–1462.**

United States Court of Appeals, Second Circuit.

Argued Jan. 14, 1991.

Decided Aug. 19, 1991.

As Amended Sept. 26, 1991.

George J. Terwilliger, II, U.S. Atty., Burlington, Vermont (David V. Kirby, John P. Tavana, of counsel), for appellee.

Rubin, Rona, Kidney & Myer, Barre, Vt. (Richard I. Rubin, of counsel), for defendant-appellant Reindeau.

Abell, Kenlan, Schweiberg & Hall, P.C., Rutland, Vt. (Carolyn Browne Anderson, of counsel), for defendant-appellant Mitchell.

Harlow, Liccardi & Crawford, P.C., Rutland, Vt. (T. Lamar Enzor, of counsel), for defendant-appellant Kennedy.

Before OAKES, Chief Judge, WALKER, Circuit Judge and WEXLER, District Judge *.

* Honorable Leonard D. Wexler, Judge of the United States District Court for the Eastern District of New York, sitting by designation.

WEXLER, District Judge.

Defendants Paul J. Reindeau ("Reindeau"), Steven Arthur Mitchell, Jr. ("Mitchell"), and Billy Joe Kennedy ("Kennedy") appeal from judgments entered in the United States District Court for the District of Vermont, after a jury trial before Lee P. Gagliardi, *Judge*, convicting them of: one count of possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d); one count, as against each, of knowingly and willfully making false declarations to a grand jury, in violation of 18 U.S.C. § 1623; and conspiring to make those false declarations, in violation of 18 U.S.C. § 371. On appeal, defendants argue, *inter alia*, that the trial court erred in refusing to allow them to cross-examine the government's expert witness concerning whether an explosive device involved was intentionally designed for use as a weapon. For the reasons stated below, we find merit in this contention and vacate the judgments of conviction for the counts involving possession of an unregistered firearm, and remand to the district court for a new trial. Finding no merit in defendants' other arguments, we affirm the convictions on the remaining counts.

## BACKGROUND

On May 28, 1988, at approximately 2:30 a.m., on Berry Hill Road between the villages of Sheffield and Sutton, Vermont, an explosion was heard outside of a dairy farm owned by the Berry family. Following the explosion, according to the government's witnesses, a vehicle was seen traveling away from the farm. Police investigating the area detected and found tire spin marks, pieces of pipe, a piece of a burnt fuse, and pieces of maroon plastic, apparently of the type used on automobile interiors. On that same night, Reindeau was brought to a local hospital by Kennedy and Mitchell, having suffered serious injury to his hand, including the loss of portions of two fingers. Prior to and up through the trial, the factual circumstances surrounding the incident were disputed by defendants.

At trial, the government's case centered on the theory that the three defendants had traveled to the Berry Farm in a pickup truck with a small pipe bomb. The prosecution attempted to prove that defendants had planned to bomb the Berry Farm in retribution for the shooting of Kennedy four years earlier by the farm's owner, who had caught Kennedy stealing gasoline from the farm. With respect to the incident involving the explosion, the government theorized that the pipe bomb had exploded in Reindeau's hand as he prepared to throw it, causing his injury.

The defendants' explanation of the incident, as told to investigators and the grand jury, significantly differed from that of the government. According to defendants, on May 28, 1988, all three of them attended a party at the home of Randy Mitchell, defendant Mitchell's brother. At one point, Reindeau left the party. Sometime thereafter, defendants Mitchell and Kennedy left the party as well, in Randy Mitchell's pick-up truck. While travelling along a road which adjoined the Berry Farm, they noticed Reindeau seeking assistance. As they stopped to pick him up, they saw his injured hand and took him to the hospital for treatment. Reindeau had claimed that while passing along the farm, he noticed the device on the ground and decided to light the fuse, attributing the injury to a mishap. In fact, defendants' position was that the device in question was commonly used as a firecracker by farm boys in the area. Mitchell's counsel, in her opening statement at trial, went so far as to describe the device as a firecracker.

At trial, the government's proof included expert testimony regarding the explosion and the device which caused it. It is to be noted that, with respect to the count charging possession of an unregistered firearm, the relevant statute provides that "[i]t shall be unlawful for any person ... to receive or possess a firearm which is not registered to him...." 26 U.S.C. § 5861. For the purposes of this case, included within the category of firearms are "destructive devices," which are defined by the statute. *See* 26 U.S.C. § 5845(f) ("§ 5845(f)"). It is therein provided that "[t]he term 'destruc-

tive device' shall not include any device which is neither designed nor redesigned for use as a weapon...." *Id.*

On direct examination, the government's expert, Joseph Lund, an explosives enforcement officer with the Department of Treasury's Bureau of Alcohol, Tobacco and Firearms, testified that he believed the fragments of metal recovered from the scene were fragments of a pipe bomb. Moreover, Lund testified that a pipe bomb is an explosive device as defined by the statute, and that it has no "social, commercial or industrial applications." J.A.[1] at 72. When the government asked Lund what a pipe bomb is designed for, the Court sustained a defense objection.

On cross-examination, defendants sought to bring out the possibility that the device in question was of the type occasionally used as firecrackers in that region of Vermont. Given the fact that on direct examination the government's witness had testified that he believed the device was a pipe bomb with no purpose other than destruction, defendants attempted to challenge the expert's findings. In point of fact, the

expert testified specifically that the device had "no legitimate use." J.A. at 72. Thus, defendants sought to determine whether the device in question could possibly have been designed as something other than a weapon, inasmuch as the statute provides that a destructive device "shall not include any device which is neither designed nor redesigned for use as a weapon." 26 U.S.C. § 5845(f).

However, when defendants questioned the expert witness on that point, the court curtailed the cross-examination. Throughout the cross-examination, the court sustained the government's objections to each attempt by defense counsel to raise the possibility that the device was of a design not covered by the statute.[2] Following the cross-examination, and outside the presence of the jury, the Court entertained defendants' exceptions. At that time, defendants argued that it was for the jury to decide whether the device in question was a destructive device under the statute, and that the court had precluded any effective cross-examination of Lund. To that end, defendants noted that they specifically de-

---

1. "J.A." refers to the joint appendix filed by the parties on this appeal.

2. The relevant aspects of the cross-examination are as follows:

Q: [Mr. Rubin]: And then, as Mr. Caruso asked you, you also give your opinion that this violates federal statutes. Right?
A: Yes, sir.
Q: And you don't dispute the fact that it's the jury that decides whether this is an illegal weapon, do you?
Mr. Caruso: Objection.
The Court: Objection sustained.
 *  *  *  *  *  *
Q: [Mr. Rubin]: So if this is not designed as a weapon, in your opinion it wouldn't fall within the definition. Isn't that right?
Mr. Caruso: Objection.
The Court: Sustained.
 *  *  *  *  *  *
Q: [Mr. Rubin]: Now, all devices, if you will, that have black powder in them are not illegal. Right?
Mr. Caruso: Same objection, your Honor.
The Court: Yes. Sustained.
 *  *  *  *  *  *
Q: [Mr. Rubin]: Shotgun shells illegal under this statute?
Mr. Caruso: Objection, your Honor.
The Court: Yes. Sustained.

Q: What about firecrackers, Mr. Lund?
Mr. Caruso: Objection.
The Court: Sustained.
 *  *  *  *  *  *
Q: [Mr. Rubin]: Now, in your opinion do fireworks have legitimate social purposes?
Mr. Caruso: Objection, your Honor.
The Court: Sustained.
Q: Do you know what a cherry bomb is?
Mr. Caruso: Objection.
The Court: Sustained.
Mr. Rubin: The Court's not allowing me to cross-examine—
The Court: Sustained.
Q: Have you ever been up to the Northeast Kingdom?
A: Where—
Mr. Caruso: Objection.
The Court: Yes. Sustained.
Q: Did you come up to this—do you know where the Northeast Kingdom is?
Mr. Caruso: Objection.
The Court: Sustained.
 *  *  *  *  *  *
Q: [Mr. Rubin]: In fact, Mr. Lund, do you know whether those devices are commonly or regularly used or made in northern Vermont as fireworks?
Mr. Caruso: Objection.
The Court: Sustained.
(J.A. at 74–79).

sired to challenge the expert's determination that the device in question was in fact a destructive device under § 5845(f). In response, the court noted that "[t]he question is not whether or not this was a firecracker. The question's not [sic] whether this was a destructive device as defined under the statute. The fact that you might make that error for other reasons to make bombs and other—all of that, that's not relevant to the issue in this case." J.A. at 82.

As noted above, the jury found each of the defendants guilty on all counts of the indictment. Reindeau and Mitchell both were sentenced to fifteen months incarceration on each count of conviction, to be served concurrently and followed by a term of two years supervised release. Kennedy was sentenced to twenty-one months incarceration on each count, to be served concurrently and followed by a term of two years supervised release. On appeal, defendants' contentions include: (1) that the government's evidence was insufficient to prove both a conspiracy to lie to the grand jury and that Kennedy and Mitchell aided and abetted the possession charge; (2) that the trial court erred in allowing evidence that Kennedy was previously shot by Raymond Berry; and (3) that the government's evidence was insufficient to prove that the destructive device was not registered to Reindeau, in violation of 26 U.S.C. § 5861(d). However, defendants' most compelling contention on appeal is that the trial court committed reversible error in restricting the cross-examination of the government's expert witness to bring out facts to support the defense theory under § 5845(f).

## DISCUSSION

■ As this Court has noted, "[i]t is well established that the scope and extent of cross-examination are generally within the sound discretion of the trial court." *United States v. Pedroza,* 750 F.2d 187, 195 (2d Cir.1984) (citations omitted); *United States v. Maldonado–Rivera,* 922 F.2d 934, 955 (2d Cir.1990) (citations omitted). However, in *Pedroza* we cautioned that "[w]ide lati-

tude should be allowed, ... when a government witness in a criminal case is being cross-examined by the defendant, ... and the trial judge's discretion 'cannot be expanded to justify a curtailment which keeps from the jury relevant and important facts bearing on the trustworthiness of crucial testimony....' " 750 F.2d at 195–96 (quoting *Gordon v. United States,* 344 U.S. 414, 423, 73 S.Ct. 369, 375, 97 L.Ed. 447 (1953)); *see also Maldonado–Rivera,* 922 F.2d at 955 (citations omitted) (noting that the basic purpose of the Confrontation Clause of the Sixth Amendment is to assure the opportunity for cross-examination). Nevertheless, a trial court's restriction of cross-examination should not be reversed absent a finding that there has been abuse of its broad discretion. *Maldonado–Rivera,* 922 F.2d at 956 (citing *United States v. Tillem,* 906 F.2d 814, 827 (2d Cir.1990); *United States v. Tutino,* 883 F.2d 1125, 1140 (2d Cir.1989), *cert. denied,* 493 U.S. 1081, 110 S.Ct. 1139, 107 L.Ed.2d 1044 (1990)).

■ In the present appeal, defendants argue that, pursuant to § 5845(f), an absolute defense exists where it is shown that the device in question was "neither designed nor redesigned for use as a weapon." More specifically, defendants argue that the trial court's curtailment of the cross-examination effectively precluded the presentation of their defense, in that defendants always maintained, both up to and at trial, that the device which injured Reindeau was a firecracker-type device commonly used in the area. *See United States v. Posnjak,* 457 F.2d 1110, 1116 (2d Cir. 1972) (noting that "a device which otherwise appeared to fall within the statute would be exempted from its requirements if it could be shown that it was not designed as a weapon."); *see also United States v. Bubar,* 567 F.2d 192, 201 (2d Cir.) (noting that in *Posnjak,* "those materials were susceptible of legitimate use and since the language of § 5845(f) contemplated the existence or potential existence of a device which would meet objectively the criteria of the statute independent of the user's intent, the materials there involved did not constitute a 'destructive device' " within the statute), *cert. denied,* 434

U.S. 872, 98 S.Ct. 217, 54 L.Ed.2d 151 (1977).

We agree that the trial court's restriction of defendants' cross-examination impermissibly precluded the defendants from presenting their defense, and in our view this cannot be characterized as harmless error. *See Kotteakos v. United States*, 328 U.S. 750, 764–65, 66 S.Ct. 1239, 1247–48, 90 L.Ed. 1557 (1946) (holding that error not harmless unless the court can conclude that it did not substantially influence the jury). On direct examination, the government elicited from its expert that the device was a pipe bomb, and of such a construction that it could not possibly have been designed for any legitimate use. That said, in our view, the defendants should have had the opportunity on cross-examination to challenge the expert's conclusion that the device was designed as a pipe bomb. If the defense could have created an issue as to that determination, based on either the expert's investigation of the particular device in question or his experience with other investigations, the jury may have found reasonable doubt under the applicable law. *See* 26 U.S.C. § 5845(f); *Posnjak*, 457 F.2d at 1116. In short, in light of the fact that Reindeau unquestionably held the device in his hand at some point, given his injury, and that the government elicited its expert's conclusion on direct, the prejudice to defendants caused by the restriction of cross-examination was overwhelming. *See Pedroza*, 750 F.2d at 197; *United States v. Kohan*, 806 F.2d 18, 23 (2d Cir.1986).

The government argues that under *Posnjak*, the design of the device must be objectively evaluated and therefore the defendants' line of questioning was irrelevant. However, even applying an objective test, we also pointed out in *Posnjak* that a device would be exempted from the statute if it could be shown that "it was not designed as a weapon." 457 F.2d at 1116. In our view, this is precisely what defendants attempted to do on cross-examination. The record is clear that defendants had always maintained that the device was a fire-cracker and not a pipe bomb. By curtailing the cross-examination as it did, the trial court wholly prevented the possibility that defendants could raise a reasonable doubt as to the design of the device. Under the plain words of the statute itself, such an inquiry is clearly relevant. *See* 26 U.S.C. § 5845(f).

The government further argues that whether or not an object is a firecracker has no bearing on whether it is a destructive device, since the term firecracker is not subject to a strict definition. Thus, the government asserts that some firecrackers may well be destructive devices. Although we agree with such a proposition, clearly some firecrackers may not fall within the bounds of § 5845(f). To that end, defendants had the right to cross-examine the expert as to his belief that the device in question was, from an objective viewpoint, designed as a weapon. If nothing else, defendants might have been able to impeach the expert regarding either his opinion of the overall design, or that the component parts which the expert analyzed could have combined to form a device with some arguably social use.

Based on the discussion above, we cannot find the curtailment of cross-examination in this case to have been harmless. *See Pedroza*, 750 F.2d at 197 (citations omitted); *Kohan*, 806 F.2d at 23; *see also Maldonado–Rivera*, 922 F.2d at 955 (citations omitted) (noting that the trial court "should avoid any blanket prohibition on exploration of an area that is central to an assessment of the witness's reliability"). Accordingly, we remand for a new trial as to Count V of the indictment, which charged defendants jointly with possession of an unregistered destructive device in violation of 26 U.S.C. § 5861(d). As to the convictions on the other counts, which charged each defendant with making false declarations to a grand jury, in violation of 18 U.S.C. § 1623, and conspiring to make those false statements, in violation of 18 U.S.C. § 371, we find defendants' arguments to be without merit. Accordingly, those convictions are affirmed.

## CONCLUSION

For the reasons stated above, we vacate the judgments of conviction and remand for a new trial as to the convictions based on violations of 26 U.S.C. § 5861(d). The convictions on the remaining counts are affirmed.