**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 24 1997**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

LEO EARL GAMBLIN, JR.,

Defendant-Appellant.

Case No. 95-6442

(D.C. 95-82-A)
(Western District of Oklahoma)

**ORDER AND JUDGMENT**[*]

Before PORFILIO, McWILLIAMS, and HENRY, Circuit Judges.

Defendant-appellant Leo Earl Gamblin, Jr. was charged under 26 U.S.C. § 5861(e)

and 18 U.S.C. § 371 for conspiracy to transfer unregistered firearms, and under 26 U.S.C.

§ 5861(d) and 18 U.S.C. § 2 for possession, and aiding and abetting the possession, of an

unregistered firearm. He was convicted on all counts and sentenced to 63 months

imprisonment.

On appeal, Mr. Gamblin argues that the district court erred in excluding evidence

during his trial and in calculating his sentence. He contends that the district court

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

incorrectly precluded him during trial from cross-examining a government explosives expert about whether the grenades appeared to be inert. He also argues that the district court improperly based his sentence on findings: (1) that he was not a "minimal" or "minor" participant in the criminal activity, and (2) that he possessed the grenades "in connection with another felony offense." We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I. BACKGROUND

One evening, Mr. Gamblin drove Anthony Wolfe, Travis Johnson, and Bridgette Smith to a gas station to purchase crack cocaine. Once there, Mr. Wolfe entered the dealer's truck and bought the cocaine while the others remained in Mr. Gamblin's car. Mr. Wolfe returned to Mr. Gamblin's car with the cocaine and a box containing ten hand grenades, which he had traded to the dealer about a week earlier for cocaine. The dealer had apparently soured on the grenades-for-drugs deal and returned the grenades.

Mr. Gamblin drove his companions to his home, where Mr. Wolfe told him about the grenades. Mr. Wolfe brought the grenades into the house and used Mr. Gamblin's telephone to find a purchaser for them. The group passed around one of the grenades for everyone to examine.

Later that evening, Mr. Gamblin drove Mr. Wolfe to Mr. Johnson's residence to purchase more cocaine. Once there, Mr. Wolfe traded Mr. Johnson two grenades for some cocaine.

Still later that evening, Mr. Gamblin drove Mr. Wolfe to a motel parking lot to sell grenades to David Reese, who happened to be a government informant. After the transaction was complete, Mr. Gamblin and Mr. Wolfe were arrested.

## II. ANALYSIS

### A. Evidentiary Ruling

Mr. Gamblin argues that the district court incorrectly precluded him during trial from cross-examining a government explosives expert about whether the grenades appeared to be inert. Mr. Gamblin sought to elicit testimony that blue spoons on the grenades indicated they were unarmed, in order to suggest that he did not know they could detonate. The district court disallowed the proposed questioning on the grounds that: (1) the government did not have to prove that Mr. Gamblin knew the grenades could detonate, and (2) the questions would cause jury confusion that could not be cured by instruction. See Rec. vol. V at 459 (Trial transcript).

Trial judges have wide latitude under the Sixth Amendment's Confrontation Clause to impose reasonable limits on cross-examination to avoid, among other things,

3

confusion of the issues and interrogation that is only marginally relevant. See Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986). Claims that confrontation rights have been violated are reviewed de novo. See Miranda v. Cooper, 967 F.2d 392, 401 (10th Cir. 1992).

Mr. Gamblin argues that the district court erroneously concluded that the government did not have to prove he knew the grenades could detonate. He relies primarily on Staples v. United States, 511 U.S. 600 (1994). In Staples, the defendant was charged, like Mr. Gamblin, with possessing an unregistered firearm. Id. at 602-04. The firearm Mr. Staples possessed was a semiautomatic rifle that had been modified for fully automatic fire. Id. at 603. Such conversion shows no externally visible signs that would alert a person to the firearm's ability to fire automatically. See id. at 615.

The Supreme Court held that the government was required to prove that Mr. Staples knew of the automatic-fire capability that brought the firearm within the statutory prohibition. Id. at 602. The Court reasoned that gun ownership has traditionally been widely accepted, id. at 612, and that it was unlikely that Congress intended to impose severe criminal penalties on persons who only had knowledge of traditionally lawful conduct. Id. at 615.

The Court cautioned that its holding was "narrow," emphasizing: "[O]ur reasoning depends upon a commonsense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals

4

may legitimately have in dealing with the regulated items." Id. at 619. The Court explicitly distinguished grenades from guns, noting that the former have a "quasi-suspect character" and no tradition of lawful ownership. Id. at 612.

The "quasi-suspect" character of hand grenades means that the government does not have to prove that a defendant knew of the destructive capability that subjects the grenades to statutory regulation. As the Court observed in United States v. Freed, 401 U.S. 601 (1971): "one would hardly be surprised to learn that possession of hand grenades is not an innocent act." Id. at 609.

Because the proposed cross-examination concerned whether Mr. Gamblin knew the grenades were armed, it was irrelevant. Therefore, the district judge properly precluded it.

The other case on which Mr. Gamblin relies, United States v. Reindeau, 947 F.2d 32 (2d Cir. 1991), is not on point. In Reindeau, the defendants were charged, like Mr. Gamblin, with possessing an unregistered firearm. Id. at 33. During trial, the defendants sought to cross-examine a government witness about whether the device in question was actually a "destructive device," as defined in the statute -- whether it was, in fact, a firecracker rather than a pipe bomb. Id. at 34-35. Reindeau, therefore, concerned cross-examination not about whether a defendant knew a device was destructive, but rather about whether the device was in fact destructive. In this case, there was no question that the grenades were destructive. The proposed cross-examination concerned only whether

5

Mr. Gamblin knew they were destructive, as stated above. Accordingly, the cross-examination was irrelevant and properly precluded for the reasons stated above.

## B. Sentence

Mr. Gamblin argues that the district court erred in basing his sentence on findings: (1) that he was not a "minimal" or "minor" participant in the criminal activity, and (2) that he possessed the grenades "in connection with another felony offense." These arguments will be discussed in turn.

With respect to minimal or minor participation, a defendant must prove his entitlement to an offense level reduction by a preponderance of the evidence. See United States v. Williamson, 53 F.3d 1500, 1523 (10th Cir. 1995), cert. denied, 116 S. Ct. 218 (1995). A district court's determination whether a defendant was a minimal or minor participant is a factual finding, reviewed only for clear error. See id. A finding of fact is clearly erroneous if it is without factual support in the record, or if after review of the evidence, the appellate court is left with the definite and firm conviction that a mistake has been made. See id.

With respect to possession in connection with another felony offense, we review factual findings under the clearly erroneous standard. See United States v. Farnsworth, 92 F.3d 1001, 1009 (10th Cir. 1996), cert. denied, 117 S. Ct. 596 (1996). We review questions of law de novo. See id.

### 1. "Minimal" or "Minor" Participant

Mr. Gamblin argues that the district court erred in finding that he was not a "minimal" or "minor" participant under United States Sentencing Guideline ("USSG") § 3B1.2, which states:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> (a)  If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b)  If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

USSG Manual § 3B1.2 (1995).

Minimal participants are "defendants who are plainly among the least culpable of those involved in the conduct of a group." USSG Manual § 3B1.2 cmt. (n.1). "[A] minor participant means any participant who is less culpable than most other participants, but whose role could not be described as minimal." Id. (n.3).

"[T]he defendant's lack of knowledge or understanding of the scope and structure of the enterprise and of the activities of others is indicative of a role as a minimal participant." Id. (n.1). "It is intended that the downward adjustment for a minimal participant will be used infrequently." Id. (n.2).

The district court found that Mr. Gamblin was not a minimal or minor participant because he "took affirmative steps to assist [Mr.] Wolfe in the criminal conduct." Rec. vol. I, doc. 75 at 3 (Findings dated Nov. 28, 1995). The court noted that, "although [Mr.] Wolfe may have been somewhat more culpable . . . , the offenses could not have been completed without [Mr. Gamblin's] willing participation." Id. at 2-3.

Mr. Gamblin argues that the district court's findings were clearly erroneous because his involvement with the grenades was unexpected and passive. He claims he was unaware that grenades would be returned during the initial drug purchase, and that afterward he simply chauffeured Mr. Wolfe while the latter disposed of the grenades. Mr. Wolfe testified that he alone possessed and distributed the grenades, and Mr. Gamblin compares himself to a mere courier who is conscripted to deliver a small quantity of drugs.

Mr. Gamblin's arguments are unpersuasive; the district court's findings are adequately supported by facts in the record: After learning of the grenades, Mr. Gamblin did not stop Mr. Wolfe from bringing them into his house or from using his telephone to find a purchaser for them. He later drove Mr. Wolfe to Mr. Johnson's residence and received some of the cocaine obtained there in exchange for the grenades. Although Mr. Gamblin testified that he planned to leave Mr. Wolfe at the motel parking lot once he was reimbursed for gas, Mr. Wolfe testified that Mr. Gamblin proposed using the profits from the grenade sale to purchase more cocaine if the cocaine could be purchased before

8

midnight. Rec. vol. V. at 337. This evidence is sufficient to show that Mr. Gamblin was not just a chauffeur or courier for the grenade transactions, as he claims, but also a planner and beneficiary of them.

Even if Mr. Gamblin had been a mere courier, he would not automatically qualify as a minimal or minor participant: "this court has refused to adopt a per se rule that couriers are minor or minimal participants." United States v. Ballard, 16 F.3d 1110, 1115 (10th Cir. 1994). Of Mr. Gamblin, it can be said what this court said of a defendant in another case:

> [His] services as a courier were as indispensable to the completion of the criminal activity as those of the seller . . . and the buyer . . . , and we agree that to debate which one is less culpable than the others "is not productive." It is akin to the old argument over which leg of a three-legged stool is the most important leg.

United States v. Carter, 971 F.2d 597, 600 (10th Cir. 1992) (quoting United States v. Arredondo-Santos, 911 F.2d 424, 426 (10th Cir. 1990)). Therefore, the district court properly concluded that Mr. Gamblin was not a minimal or minor participant, even though it may be arguable that Mr. Wolfe and the others were more culpable.

## 2. Grenade Possession "in Connection with Another Felony Offense"

Mr. Gamblin argues that the district court erred in finding that he possessed the grenades "in connection with another felony offense," as contemplated in USSG § 2K2.1(b)(5). That section authorizes a four-level enhancement "[i]f the defendant...

9

possessed any firearm . . . in connection with another felony offense." USSG Manual §

2K2.1(b)(5) (1995). The term "firearm" encompasses "any destructive device," including

grenades. Id. cmt. (nn.1, 4). "[F]elony offense" means "any offense (federal, state, or

local) punishable by imprisonment for a term exceeding one year, whether or not a

criminal charge was brought, or conviction obtained." Id. (n.7). The district court found

that Mr. Gamblin possessed the grenades in connection with the drug transaction at Mr.

Johnson's residence. See Rec. vol. I, doc. 75 at 2 (Findings dated Nov. 28, 1995).

### a. "Emboldening" Role

Mr. Gamblin argues that the grenades had no "emboldening" role in his conduct.

He relies on United States v. Routon, 25 F.3d 815, 818 (9th Cir. 1994), which adopted

this circuit's approach to § 2K2.1(b)(5), as stated in United States v. Gomez-Arrellano, 5

F.3d 464 (10th Cir. 1993). In Gomez, we analogized § 2K2.1(b)(5) to 18 U.S.C. §

924(c)(1), which proscribes using or carrying firearms "during and in relation to" a drug

trafficking offense or other crime of violence. Id. at 466. Applying our reasoning to §

2K2.1(b)(5), Routon stated that "to the extent that the government relies on physical

possession, it must show that the firearm . . . had some potential emboldening role in[] a

defendant's felonious conduct." 25 F.3d at 819 (emphasis added).

Mr. Gamblin appears to be correct that the grenades played no emboldening role in

the drug transaction with Mr. Johnson. The term "emboldening" has been used to

10

describe instances where firearms were employed to protect the criminal or to intimidate others. See, e.g., United States v. Wright, 932 F.2d 868, 881 (10th Cir. 1991). Here the grenades were used not as weapons, but as items of barter.

Despite this fact, the use of the grenades was within the scope of § 2K2.1(b)(5). Trading firearms for drugs constitutes "us[ing]" the firearms under § 924(c)(1). See Smith v. United States, 508 U.S. 223, 237 (1993). The text of § 2K2.1(b)(5) includes not the verb "us[ed]," as in § 924(c)(1), but rather the verb "possessed." Possession covers a broader range of activity than use. See Bailey v. United States, 116 S. Ct. 501, 506 (1995). Because firearms-for-drugs trades fall within the shorter reach of § 924(c)(1), they must also fall within the wider embrace of § 2K2.1(b)(5).

This is the same conclusion we reached in an unpublished opinion, United States v. West, No. 92-6197, 1993 WL 26816 (10th Cir. Feb. 5, 1993), without explaining our reasoning. In West, we held that a shotgun was possessed under § 2K2.1(b)(5) when the defendant hoped to trade the shotgun for cocaine. Id. at *1-2.

As we noted in Gomez, the key requirement for "possession" under § 2K2.1(b)(5) is that "the weapon facilitates or has the potential to facilitate the drug offense." 5 F.3d at 466-67. Certainly the trading of firearms for drugs facilitates the drug offense.

11

### b. Possession by Mr. Gamblin or by Mr. Wolfe?

The crux of Mr. Gamblin's argument, however, is not about the emboldening concept in <u>Routon</u>. Rather, Mr. Gamblin principally argues that Mr. Wolfe, not he, possessed the grenades in connection with the drug transaction with Mr. Johnson. Mr. Gamblin again claims he was just a chauffeur for Mr. Wolfe, who at all times possessed and distributed the grenades.

This argument is meritless. Mr. Gamblin cannot shift blame to Mr. Wolfe given the nature of his conviction under Count Two. Count Two charged Mr. Gamblin under 26 U.S.C. § 5861(d) with possessing a grenade, and under 18 U.S.C. § 2 with aiding and abetting the possession of a grenade. Conviction under either prong of Count Two would be sufficient to defeat Mr. Gamblin's sentencing objection, but it is necessary for us to consider both prongs because it is unclear whether the jury found Mr. Gamblin guilty of possessing a grenade, aiding and abetting the possession of a grenade, or both. The verdict form did not ask the jury to render separate verdicts on possession and aiding and abetting; the form simply called for a general verdict on Count Two. Rec. vol. I, doc. 58 at 1.

**i.  Possession**

With respect to the possession charge, Mr. Gamblin's grenade possession was established upon conviction: "possession" is a necessary element of a conviction under 26 U.S.C. § 5861(d), Freed, 401 U.S. at 612, and "possession" has functionally the same meaning under both § 5861(d) and the Sentencing Guidelines. Compare United States v. Sullivan, 919 F.2d 1403, 1430 (10th Cir. 1991) (defining "possession" under § 5861(d) as including actual and constructive possession) with United States v. Bruce, 78 F.3d 1506, 1509 (10th Cir. 1996) (defining "possession" under the Sentencing Guidelines according to its "plain meaning"), cert. denied, 117 S. Ct. 149 (1996). A sentencing is not an opportunity to relitigate a fact established upon conviction, such as Mr. Gamblin's grenade possession; Mr. Gamblin was not entitled during sentencing to challenge the jury's verdict and argue that it was actually Mr. Wolfe who possessed the grenades. Cf. United States v. Carr, 5 F.3d 986, 995 (6th Cir. 1993) (requiring findings of fact as to the defendant's sentencing objections, but noting no other error in the district court's conclusion that the objections were merely an attempt to retry issues decided by the jury); United States v. Rojo-Alvarez, 944 F.2d 959, 968 n.2 (1st Cir. 1991) ("[The defendant] implies that the government had a duty to 'retry' the case at sentencing . . . We find this argument to be wholly lacking in merit.").

14

### ii. Aiding and Abetting

With respect to the aiding and abetting charge, Mr. Gamblin likewise cannot avoid being held accountable for the grenade possession. The principal whom Mr. Gamblin aided and abetted was Mr. Wolfe. Mr. Gamblin does not dispute that Mr. Wolfe possessed the grenades in connection with another felony offense. Because Mr. Wolfe was eligible for a sentencing enhancement for possession in connection with another offense, so was Mr. Gamblin: under 18 U.S.C. § 2, an aider and abettor "is punishable as a principal." 18 U.S.C. § 2 (1994). Therefore, Mr. Gamblin's attempt to shift blame to Mr. Wolfe is unavailing.

### c. Grounds Not Relied upon by the District Court

In finding that Mr. Gamblin possessed the grenades in connection with another felony offense, the district court did not rely on the grounds discussed above. We are, however, "free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court." United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994) (quoting Medina v. City & County of Denver, 960 F.2d 1493, 1495 n.1 (10th Cir. 1994)). Accordingly, we conclude that the foregoing shows that the district court did not err in

15

finding that Mr. Gamblin possessed the grenades in connection with another felony offense.

### III.  CONCLUSION

We find Mr. Gamblin's arguments unpersuasive for the reasons stated above.  In summary, these reasons are as follows:  First, the district court properly precluded Mr. Gamblin during trial from cross-examining the government explosives expert about whether the grenades appeared to be inert.  It was irrelevant whether Mr. Gamblin knew the grenades could detonate.  Unlike guns, hand grenades have a "quasi-suspect character" and no tradition of lawful ownership: one would hardly be surprised to learn that possession of hand grenades is illegal.  Therefore, the government was not required to prove that Mr. Gamblin knew of the destructive characteristics that subjected the grenades to statutory regulation.

Second, the district court properly determined that Mr. Gamblin was not a minimal or minor participant.  Sufficient evidence shows that Mr. Gamblin was not simply a chauffeur or courier for the grenade transactions, as he claims, but also a planner and beneficiary of them.  Even if he had been a mere courier or chauffeur, he would not automatically qualify as a minimal or minor participant.

Finally, the district court properly ruled that Mr. Gamblin possessed the grenades in connection with the drug transaction with Mr. Johnson.  Firearms traded for drugs are

16

"possessed" under USSG § 2K2.1(b)(5), and Mr. Gamblin's conviction under Count Two precluded him from arguing during sentencing that it was actually Mr. Wolfe who possessed the grenades.

The district court's decisions are AFFIRMED. The mandate shall issue forthwith.

Entered for the Court,


Robert H. Henry
Circuit Judge