UNITED STATES, Appellee

v.

Travis H. GOSSER, Private
U.S. Marine Corps, Appellant

No. 05-0678

Crim. App. No. 200302070

United States Court of Appeals for the Armed Forces

Decided September 28, 2006

PER CURIAM.  CRAWFORD, J., filed a separate opinion concurring
in the result.  EFFRON, J., filed a separate opinion concurring
in part and in the result.  ERDMANN, J., filed a dissenting
opinion.


Counsel

For Appellant:  Lieutenant James E. Golladay II, JAGC, USN, (on
brief).

For Appellee:  Charles N. Purnell, Commander, JAGC, USN;
Lieutenant Mark H. Harrington, JAGC, USNR (on brief).

Military Judge:  R. K. Fricke


**This opinion is subject to revision before final publication.**

PER CURIAM:

On Appellant's petition, we granted the following issues for review:

> I. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS LACKED JURISDICTION TO REVIEW THE FINDINGS AND SENTENCE IN APPELLANT'S CASE PURSUANT TO ARTICLE 66(b)(1), UNIFORM CODE OF MILITARY JUSTICE, IN LIGHT OF THE CONVENING AUTHORITY'S UNAMBIGUOUS ACTION THAT DID NOT APPROVE APPELLANT'S ADJUDGED BAD-CONDUCT DISCHARGE.
>
> II. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED IN ACCEPTING THE NEW CONVENING AUTHORITY'S ACTION AS A COMPETENT CLARIFICATION OF WHETHER THE ORIGINAL CONVENING AUTHORITY HAD INTENDED TO GRANT CLEMENCY.
>
> III. WHETHER THE NAVY-MARINE CORPS COURT OF CRIMINAL APPEALS ERRED AS A MATTER OF LAW IN DENYING RELIEF FOR EXCESSIVE POST-TRIAL DELAY.

Issue I arises from yet another ambiguous convening authority action. In light of our recent holding in United States v. Politte,[1] we agree with the remedial action taken by the United States Navy-Marine Corps Court of Criminal Appeals when faced with an ambiguous convening authority action. The lower court properly remanded the initial convening authority's ambiguous action for clarification in accordance with Rule for Courts-Martial (R.C.M.) 1107(g)[2] before completing its review

---

[1] 63 M.J. 24, 27 (C.A.A.F. 2006) (ordering a new convening authority action to address an ambiguity in the initial convening authority action).

[2] R.C.M. 1107(g) permits an authority "acting under Article 64, 66, 67, or 69" to instruct a convening authority to withdraw an original action and substitute a corrected action where the

pursuant to Article 66, Uniform Code of Military Justice (UCMJ).[3]

Therefore, we answer Issue I in the negative.

We also answer Issue II in the negative. We conclude that no error arose when the lower court accepted an entirely new action by a successor convening authority in place of an ambiguous action by the original convening authority when the original convening authority was unavailable to clarify the intent.

As to Issue III, we disagree with the lower court. We hold that Appellant was denied his due process right to speedy review. However, because we conclude this error was harmless, we decline to grant relief under United States v. Moreno.[4]

### Facts

A special court-martial before a military judge alone, found Appellant guilty of one specification of conspiracy, two specifications of larceny, and four specifications of forgery.[5] The military judge sentenced Appellant to ninety days of confinement, forfeiture of $695 pay per month for three months, and a bad-conduct discharge.

---

original action "is incomplete, ambiguous, or contains clerical error."

[3] 10 U.S.C. § 966 (2000).

[4] 63 M.J. 129 (C.A.A.F. 2006).

[5] These offenses are punishable under Articles 81, 121, and 123, UCMJ, 10 U.S.C. §§ 881, 921, 923 (2000), respectively.

At the time of the convening authority's action, the original convening authority was unavailable. Although the Commanding Officer, Third Battalion, Third Marine Regiment, referred Appellant's case to trial, this officer was deployed with his unit to Southwest Asia in support of Operation Enduring Freedom when it was time for the convening authority's action. Therefore the original convening authority requested the commanding officer of his next superior unit to take action in his place. Colonel J. V. Medina, Commanding Officer, Third Marine Regiment, took the following action on May 30, 2003:

> In the case of Private Travis H. Gosser, U.S. Marine Corps, except for the bad-conduct discharge, the sentence is approved and ordered executed.
> . . . .
> The record of trial is forwarded to the Navy-Marine Corps Appellate Review Activity, Office of the Judge Advocate General of the Navy for review by the U.S. Navy-Marine Corps Court of Criminal Appeals pursuant to section 0153(b)(1)(a) of the JAGMAN.[6]

Shortly after the Navy-Marine Corps court received the record of trial, appellate defense counsel filed a Motion for Relief From Post-Trial Processing Error, arguing that the court had no jurisdiction to hear the case under Article 66, UCMJ. Acting pursuant to R.C.M. 1107(g), the lower court ordered the

---

[6] This provision requires that general courts-martial, which include an unsuspended or bad-conduct discharge, be forwarded to the Navy-Marine Corps Appellate Review Activity. Dep't of the Navy, Judge Advocate Inst. 5800.7D, Manual of the Judge Advocate General (JAGMAN) § 0153 b.(1)(a) (Mar. 15, 2004) [hereinafter JAGMAN § 0153 b.(1)(a)].

Judge Advocate General of the Navy to remand the case to the convening authority for corrective action.[7]

In accordance with this order, Colonel J. J. Patterson, Commanding Officer, Third Marine Regiment and successor in command to Colonel Medina, took the following action on December 14, 2005:

> In the case of [Appellant], Private Travis H. Gosser, U.S. Marine Corps, the sentence to a bad-conduct discharge, forfeiture of $695 pay per month for a period of three months, and thirty (30) days confinement is approved; and, except for the bad-conduct discharge, ordered executed. All confinement in excess of thirty (30) days is hereby disapproved.

The convening authority again forwarded the case to the lower court. On review, the Appellant raised only an issue asserting excessive post-trial delay. In a brief opinion, the lower court held Appellant was not entitled to sentence relief.[8]

## Discussion

### I.

Appellant argues the May 30, 2003, convening authority action is unambiguous and disapproves the adjudged bad-conduct discharge. As a result, Appellant argues the lower court lacked jurisdiction to act on the findings and sentence.[9] We disagree.

---

[7] The order contained language directing the convening authority to clarify his intent regarding the bad-conduct discharge.
[8] United States v. Gosser, No. 20030270 (N-M. Ct. Crim. App. Jun. 23, 2005).
[9] Appellant also contends the clarification resulted in an unfair increase in his approved sentence.

Our recent holding in Politte controls this issue.[10]  In the present case, as in Politte, there is surrounding documentation conflicting with the language of the convening authority action. This conflict presents an ambiguity that must be addressed.[11]

When addressing situations that present an ambiguity, we have concluded the proper course of action is to remand for corrective action under R.C.M. 1107(g).[12]  In Politte, we reaffirmed that R.C.M. 1107(g) empowers "an authority 'acting under'" Article 66, UCMJ, to instruct a convening authority to issue a corrective action upon a showing of ambiguity.[13]  This is exactly what the lower court did in the instant case. Accordingly, in light of the ambiguity in the original action, the lower court properly took remedial action that resulted in the preparation of a corrected convening authority action.

---

[10] 63 M.J at 27.

[11] "[W]e view the convening authority's action as ambiguous." Id. at 26.  Here, the convening authority's action appears to disapprove the bad-conduct discharge.  However, the language of the convening authority's action is inconsistent with this conclusion as it forwards the record to the Navy-Marine Corps Court of Criminal Appeals for review pursuant to JAGMAN § 0153 b.(1)(a).  Also, the pretrial agreement, the clemency submission, and the staff judge advocate recommendation each address the approval of an adjudged bad-conduct discharge. Taken as a whole, these documents create an ambiguity surrounding the original convening authority's intent.

[12] Politte, 63 M.J. at 27.

[13] Id. at 26.

II.

Appellant further alleges that, even if the lower court was correct in ordering clarification of the convening authority action, the succeeding convening authority "was not competent to clarify that issue." Appellant cites this Court's holding in United States v. Lower, 10 M.J. 263 (C.M.A. 1981), as support for the position that the successor convening authority was not competent to clarify the action. In Lower, we held that where a record was devoid of any evidence of communication between successors in authority, we could not accept the current successor's expression of intent.[14] In articulating this standard, we "[declined] to lay down a hard rule as to the evidentiary form this need take." Id.[15]

We conclude Lower is not controlling under the unique facts of this case. Lower was a case in which a successor convening authority purported to clarify the intent of his predecessor by issuing an action.[16] The end result was this Court's holding that where a supervisory authority orders a correction where no effort is made to communicate with the original convening authority to clarify the convening

---

[14] Id. at 265.
[15] At the same time we acknowledged, "[i]t is true that the powers of a commander repose in the office held, not in the holder of the office." Lower, 10 M.J. at 265 (citing United States Bunting, 4 C.M.A. 84, 15 C.M.R. 84 (1954)).
[16] Id. at 264.

authority's views, the successor convening authority cannot simply publish a correction reflecting his own views of what his predecessor decided.[17]

The present case presents a different scenario and a different approach by the convening authority. Rather than simply interpreting his predecessor's intent as in Lower, the convening authority in this case took an entirely new action. Several factors from the record highlight this point. First, the staff judge advocate issued a new recommendation, "to assist [the convening authority] in taking [his] action." Second, the staff judge advocate also followed the procedure for a new action, as he served this new recommendation on defense counsel. Defense counsel, in turn, also treated the recommendation as a new action, as he raised new arguments in favor of clemency, including personal and family considerations and rehabilitation. Third, defense counsel specifically requested a new action in the form of clemency by recommending that the convening authority disapprove the bad-conduct discharge. Finally, we note that in this case, defense counsel offered no objection to the process of taking a new action rather than a mere correction.[18]

---

[17] Id. at 265.

[18] We also note that the staff judge advocate wrote an addendum to his recommendation addressing the clemency request, and served it on defense counsel. Defense counsel waived any

In short, Lower does not answer the specific question posed in this case: may a successor convening authority issue an entirely new action in place of his predecessor when the original convening authority is unavailable to clarify his intent. Under the unique facts of this case, we hold that the lower court did not err in accepting the new convening authority's clarification and action.

### III.

Appellant finally asserts that he was subject to excessive post-trial delay that resulted in a violation of the right to due process on appeal. To assess this question, we turn to Moreno,[19] which applies a test for excessive post-trial delay based on the Supreme Court's Barker v. Wingo.[20] The four Barker factors include: (1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to timely review and appeal; and (4) prejudice.[21] The full due process analysis is triggered where the length of delay is facially unreasonable.[22]

---

response to the addendum. The convening authority's action was in the usual format of an action and made no reference to serving as a correction of the previous action.

[19] 63 M.J. at 135.

[20] 407 U.S. 514, 530 (1972).

[21] Moreno, 63 M.J. at 135.

[22] Id. at 136 (noting that this Court conducts a case-by-case analysis to determine if a given delay is facially unreasonable).

### 1. Length of the delay

The total length of the delay in this case was 1,303 days from sentencing to the Court of Criminal Appeals opinion. Standing alone, this length of time may not rise to the level of "facially unreasonable." We note, however, that two periods within this time period are extreme. The convening authority did not issue an initial action until 548 days after sentencing. It then took an additional 141 days to transmit the record for docketing at the Court of Criminal Appeals. We conclude that this is an unacceptable delay in commencing review under Article 66(c), UCMJ. Thus, the length of delay is facially unreasonable and is a circumstance that weighs heavily in the favor of Appellant.[23] Based on Moreno, we proceed to analyze the remaining Barker factors.[24]

### 2. Reasons for the delay

Here, we focus on the degree of the Government's responsibility for the delay, as well as on any factors "attributable to [Appellant]."[25] The Government has not presented evidence to explain the two unreasonable processing periods discussed above.

The chronology of events otherwise explains a reasonable action by the lower court to remand the case for clarification

---

[23] Id.
[24] Id.
[25] Id.

10

and complete plenary Article 66, UCMJ, review. There is no evidence that the length of the delay is directly attributable to Appellant himself.[26]

Therefore, we view the unreasonable and unexplained delays prior to this case being docketed at the lower court as circumstances that strongly favor Appellant.

3. Appellant's assertion of a timely right to an appeal

An appellant's assertion of a right to speedy review is "'entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.'"[27] The Government contends that Appellant did not raise this post-trial delay issue when the lower court first considered his appeal.

Indeed, it was not until after the case was remanded for corrective action that Appellant first complained about post-trial delay. In his clemency submission of January 5, 2005, responding to the staff judge advocate's recommendation on remand, Appellant raised this issue. The Government asserts Appellant's belated claim weighs in favor of the Government.

Under Moreno, this Court does not apply a waiver theory when an appellant fails to complain about excessive post-trial delay.[28] While we conclude Appellant's silence up until 2005

---

[26] Id. at 137.
[27] Id. at 138 (quoting Barker, 407 U.S. at 531-32).
[28] Id. at 138.

militates against his belated claim, we weigh this factor against Appellant only slightly.[29]

### 4. Prejudice to Appellant

We now address the question of prejudice to Appellant arising from this excessive post-trial delay.  In order to prevail on this factor, Appellant must "specifically identify how he would be prejudiced . . . due to the delay.  Mere speculation is not enough."[30]

Appellant contends that because of the excessive delay in his post-trial processing, he was unable to produce documentation to prove he received a discharge from the military that was necessary to apply for college financial aid.[31]

---

[29] Id. ("[it is not] unreasonable to assume . . . that a convicted person wants anything other than a prompt resolution of his appeal." (citing Harris v. Champion, 15 F.3d 1538, 1563 (10th Cir. 1994)).

[30] Id. at 140-141 (citing United States v. Mohawk, 20 F.3d 1480, 1487 (9th Cir. 1994)).

[31] The form in question was a "Form DD-214."  According to Appellant, this form was necessary to obtain financial aid for college.  In his clemency submission of January 2005, Appellant stated:

> After being placed on appellate leave in January 2002, Private Gosser has continued to apply for financial aid to attend college in order to obtain a business degree.  However, because he has not been able to produce a DD214 over the last three years, his parents' income has been included in the calculation when determining his entitlement to financial aid, leading to its continued denial.  Unfortunately, although his parents earned too much money for him to qualify for financial aid, they didn't earn enough to help him with college expenses.

Appellant relies on United States v. Jones,[32] and argues that he "had an opportunity for a second chance that was hindered by the unjustified delay in [processing] his case after he pleaded guilty."[33]

The Government, on the other hand, asserts Appellant's claim of prejudice fails absent tangible documentary evidence supporting the need for the form DD-214. We conclude that Appellant has failed to substantiate any claim of prejudice. Appellant relies solely on the assertions of his defense counsel in post-trial clemency submissions to the convening authority. He has provided no substantive evidence from persons with direct knowledge of the pertinent facts, nor is there adequate detail to give the Government a fair opportunity to rebut the contention. Because Appellant failed to demonstrate any Barker prejudice, this factor weighs against him.[34]

---

[32] 61 M.J. 80 (C.A.A.F. 2005).

[33] We note that in Jones, the appellant presented stronger evidence, in the form of supporting affidavits, to underscore the necessity of the DD-214. Id. at 82. In this regard, we view Jones as instructive in assessing whether to weigh the fourth Barker factor in Appellant's favor. We must distinguish this analysis from the separate assessment of harmlessness beyond a reasonable doubt under Article 59(a), UCMJ, 10 U.S.C. § 859(a)(2000). Id. at 85-86 ("The same evidence that supports the due process test's prejudice factor [in the Barker analysis] also demonstrates prejudice for the purposes of Article 59(a), UCMJ.").

[34] Moreno, 63 M.J. at 138-39 (citing Rheuark v. Shaw, 628 F.2d 297, 303 n.8 (5th Cir. 1980)).

Summary of the Barker factors and relief

We conclude that despite the fact that Appellant has failed to show prejudice, a two-year delay in commencing review under Article 66(c), UCMJ, can diminish the public's perception of the fairness of military justice.[35]  Therefore, our consideration of the four Barker factors leads us to conclude that Appellant was denied his due process right to speedy review and appeal.

As this due process error is one of constitutional magnitude, we are now obliged to test this error for harmlessness.[36]  To rebut a showing of error, "the Government must show that this error was harmless beyond a reasonable doubt."[37]  Because we reject Appellant's clemency claim as evidence of prejudice, we conclude the error was harmless beyond a reasonable doubt.

DECISION

The decision of the United States Navy-Marine Corps Court of Criminal Appeals as to both findings and sentence is affirmed.

---

[35] United States v. Toohey, 63 M.J. 353, 362 (C.A.A.F. 2006).
[36] See Delaware v. Van Arsdall, 475 U.S. 673, 684 (1986); Chapman v. California, 386 U.S. 18, 24 (1967).
[37] United States v. Brewer, 61 M.J. 425, 432 (C.A.A.F. 2005) (quoting United States v. Miller, 47 M.J. 352, 359-60 (C.A.A.F. 1997)).

United States v. Gosser, No. 05-0678/MC

CRAWFORD, Judge (concurring in the result):

I concur with the result on Issues I and II. As in United States v. Politte,[1] 63 M.J. 24, 27 (C.A.A.F. 2006) (Crawford, J., concurring in the result), I concur in the result to allow further action in the case rather than dismissing for a lack of jurisdiction. However, as I indicated in Politte, the original action in that case had a typographical error. "Several factors [would] lead one to the common sense conclusion that there was an administrative oversight in the convening authority's action that was not consistent with the intent of the convening authority." Id. Because Politte was a 2-1-2 opinion, I thought the better result was that reached by Chief Judge Gierke. Id. at 27-28. Thus, I concurred in the result. I also agree that United States v. Lower, 10 M.J. 263 (C.M.A. 1981) is distinguishable based on the unique facts of this case.

As to Issue III, I disassociate myself from the Court's analysis based on United States v. Moreno, 63 M.J. 129 (C.A.A.F. 2006), and its misapplication of the Barker v. Wingo, 407 U.S. 514 (1972), test. See Moreno, 63 M.J. at 144 (Crawford, J., concurring in part and dissenting in part).

---

[1] Counsel at oral argument in Politte indicated that the appellant's name in that case was pronounced "polite," as in being courteous.

EFFRON, Judge (concurring in part and in the result):

I concur in the lead opinion except for Part III, which addresses post-trial delay.  Because any error was harmless beyond a reasonable doubt, we need not reach the question of whether Appellant has suffered a denial of due process from any delay.  See United States v. Allison, 63 M.J. 365, 371 (C.A.A.F. 2006).

<u>United States v. Gosser</u>, No. 05-0678/MC

ERDMANN, Judge (dissenting):

Because the majority finds ambiguity by going beyond the four corners of this otherwise unambiguous action, I respectfully dissent.  <u>See</u> <u>United States v. Politte</u>, 63 M.J. 24, 28 (C.A.A.F. 2006) (Erdmann, J., dissenting).  The action here is not ambiguous.  The convening authority did not approve the adjudged bad-conduct discharge.  The Court of Criminal Appeals should have reviewed this action and found that it had no statutory authority to conduct further review.  I would set aside the decision of the United States Navy-Marine Corps Court of Criminal Appeals and return the case to the Judge Advocate General of the Navy without addressing the remaining issues.