**UNITED STATES AIR FORCE COURT OF CRIMINAL APPEALS**

**UNITED STATES**

**v.**

**Staff Sergeant PATRICK J. GRIEGO**
**United States Air Force**

**ACM 38600**

**5 November 2015**

Sentence adjudged 14 February 2014 by GCM convened at Joint Base San Antonio–Randolph, Texas.  Military Judge:  Wendy L. Sherman.

Approved Sentence:  Bad-conduct discharge, confinement for 9 months, and reduction to E-1.

Appellate Counsel for Appellant:  Major Jennifer J. Raab and Captain Lauren A. Shure.

Appellate Counsel for the United States:  Major Mary Ellen Payne; Captain Richard J. Schrider; and Gerald R. Bruce

Before

ALLRED, HECKER, and SANTORO
Appellate Military Judges

OPINION OF THE COURT

This opinion is issued as an unpublished opinion and, as such, does not serve as precedent under AFCCA Rule of Practice and Procedure 18.4.

HECKER, Senior Judge:

A general court-martial composed of officer members convicted Appellant, contrary to his pleas, of assaulting his girlfriend and her two-year old son and violating a no-contact order, in violation of Articles 128 and 92, UCMJ, 10 U.S.C. §§ 928, 892.[1]

---

[1] Appellant was acquitted of communicating a threat to his girlfriend, in violation of Article 134, UCMJ, 10 U.S.C. § 934.

The adjudged and approved sentence was a bad-conduct discharge, confinement for 9 months, and reduction to E-1.

Before us, Appellant asserts two post-trial processing errors: (1) there is no evidence his clemency submission was considered by the convening authority who took the second action in his case, and (2) the 180-day period between the completion of his trial and convening authority action merits relief.

*Background*

Appellant's trial concluded on 14 February 2014. Pursuant to Article 57, UCMJ, 10 U.S.C. § 857, the adjudged reduction in rank would take effect 14 days later, on 28 February 2014. Beginning that day, Appellant would also automatically forfeit his pay and allowances. Article 58b, UCMJ, 10 U.S.C. § 858b.

On 26 February 2014, trial defense counsel asked the convening authority to defer the adjudged reduction in rank and the automatic forfeitures until action, and also to waive the automatic forfeitures for a further six months following action. The convening authority responded to that request through a memorandum signed on 3 March 2014. He deferred the adjudged reduction and automatic forfeitures from 28 February 2014 until action. He also agreed he would waive automatic forfeitures upon taking action, but stated the six-month waiver would commence on 28 February 2014 instead of upon action (as requested by the defense).

On 1 May 2014, action in the case was taken by a subordinate to the convening authority who had temporarily assumed command during his absence. She approved the sentence after reviewing Appellant's clemency submission, but her action was flawed in that it failed to properly account for the previously-approved deferral of the reduction in rank and automatic forfeitures.[2] The action did, however, contain language waiving the automatic forfeitures for six months with a start date of 28 February 2014, consistent with the original convening authority's prior approval.

The error in the action was not caught until several months later when military pay technicians sought to recoup from Appellant the pay and forfeitures that had been paid to him based on the approved deferral. According to an unrebutted affidavit signed by the legal office's chief of military justice, finance personnel would not accept the original convening authority's memorandum and instead required a corrected court-martial order that explicitly incorporated the deferral and waiver.

---

[2] See Air Force Instruction (AFI) 51-201, *Administration of Military Justice*, ¶ 9.29.1.3 (6 June 2013) ("The terms of approved deferrals must . . . be reported in the action the convening authority ultimately takes on the case.")

Meanwhile, the case was docketed with this court on 21 May 2014. According to his affidavit, the chief of military justice consulted with personnel in the Air Force Legal Operations Agency's Military Justice Division (JAJM) on 11 August 2014, and was advised that the convening authority should withdraw the initial action and issue a new action that included the missing language.

The new action was issued on 13 August 2014, along with a new court-martial order. By this time the original convening authority had resumed his duties and it was he who issued the new action and order. Both state in pertinent part: "In the case of [Appellant], having been returned by higher headquarters, the action taken on 1 May 2014 is hereby withdrawn and General Court-Martial Order No. 10, this headquarters, dated 1 May 2014, is hereby rescinded and the following is substituted for the original action: . . . ." The action then approved the adjudged sentence and contained language regarding the deferral.[3] This action indicated the reduction and automatic forfeitures were deferred from 28 February until 1 May 2014 (the day of the original action).[4] As he had done in his original memorandum, the convening authority also waived the automatic forfeitures for six months, commencing on 28 February 2014.[5]

There is no evidence in the post-trial processing that the convening authority who signed the second action had access to or reviewed Appellant's clemency submission prior to taking action on the case in August 2014, or that he consulted with the convening authority who took action on the case on 1 May 2014. The chief of military justice's affidavit states that both the SJAR and its addendum were made available to the convening authority when she initially took action in May 2014. However, his affidavit is silent on whether the same documents (to include Appellant's clemency request) were provided to the second convening authority in August 2014 before he took what became the final action in this case.

Based on this, Appellant argues he is entitled to new post-trial processing. The Government argues that, because the convening authority who took the initial action reviewed the SJAR, addendum, and clemency request, the convening authority who took final action need not have reviewed the same.

---

[3] On 28 August 2014, this court granted a Government request to file the order and action.

[4] The action cited the wrong section of the UCMJ when annotating the prior approval of the deferment. Deferral of adjudged reductions in grade and mandatory forfeitures are authorized by Articles 57(a)(2) and 58b(a)(1), UCMJ, 10 U.S.C. §§ 857(a)(2), 858b(a)(1).

[5] This action created an overlap where the automatic forfeitures were both deferred *and* waived between 28 February and 1 May 2014. It also ended Appellant's deferral at the date of the withdrawn action instead of continuing it to the date of the final action.

Whether proper completion of post-trial processing occurred is a question of law which this court reviews de novo. *United States v. Sheffield*, 60 M.J. 591, 593 (A.F. Ct. Crim. App. 2004) (citing *United States v. Kho*, 54 M.J. 63, 65 (C.A.A.F. 2000)). If an action is found to be "illegal, erroneous, incomplete, or ambiguous" during the review of the record of trial under Article 66, UMCJ, the convening authority can modify the action "[w]hen so directed by a higher reviewing authority or the Judge Advocate General." Rule for Courts-Martial (R.C.M.) 1107(f)(2); *see also* R.C.M. 1107(g) (stating the convening authority "may be instructed by an authority acting under Article 64, 66, 67, or 69 to withdraw the original action and substitute a corrected action" when it is "incomplete, ambiguous, or contains clerical error").

The original action in this case was incomplete in that it did not include language reflecting the previously-approved deferral. Typically, in this circumstance, this court would direct the convening authority to correct this error by withdrawing the erroneous action and substituting a corrected action that contained the deferral language, and also order the promulgation of a new promulgating order containing the revised action language. R.C.M. 1107(f)(2), (g), 1114(b)(2); Air Force Instruction 51-201, *Administration of Military Justice*, ¶ 10.10.2 (6 June 2013). Here, these changes were made at the direction of JAJM prior to our review of the matter. The final action and promulgating order correct the previous error. Although JAJM's authority to direct such a change in a case already pending at this court is not clear, Appellant does not allege any prejudice from the timing of the correction, and we find no prejudice to Appellant under these circumstances. We therefore decline to remand the case for a third action which would ultimately be identical to the second one other than its issuance date.

Appellant contends, however, that the convening authority who signed the second action in the case was required to review Appellant's clemency submission before doing so. We disagree. Here, the second action was issued as a substitute for the original action, solely to correct a clerical error contained in it. Such a correction does not constitute a new action decision in the case. Therefore, even when the substitute action is signed by a convening authority who is a successor in command, no new post-trial recommendation is required and there is no requirement that the successor convening authority review the clemency submission prior to substituting a corrected action.[6] This

---

[6] In contrast, if the original action is remanded due to an ambiguity about the intent of the original convening authority and that convening authority has been replaced by a successor, then there must be some evidence that the successor convening authority communicated with the original convening authority and that the corrected action reflects the original convening authority's intent. *United States v. Lower*, 10 M.J. 263, 265 (C.M.A. 1981). Alternatively, in that circumstance, the successor convening authority may issue a new action after receiving a new staff judge advocate's recommendation and after the accused has a new opportunity to submit clemency matters. *United States v. Gosser*, 64 M.J. 93, 96–97 (C.A.A.F. 2006) (per curiam); *United States v. Mendoza*, 67 M.J. 53, 54 (C.A.A.F. 2008).

is especially true where the correction simply required the insertion of deferral language already documented in a prior memorandum signed by the convening authority.

*Post-Trial Delay*

Appellant's court-martial concluded on 14 February 2014, and the initial action was taken 76 days later on 1 May 2014. The corrected action was issued on 13 August 2014, 180 days after the court-martial concluded. Appellant argues that under *United States v. Moreno*, 63 M.J. 129, 135 (C.A.A.F. 2006), this violated his due process right to speedy appellate review. We disagree.

We review de novo whether an appellant has been denied the due process right to speedy post-trial review and whether any constitutional error is harmless beyond a reasonable doubt. *United States v. Allison*, 63 M.J. 365, 370 (C.A.A.F. 2006). The overall delay of more than 120 days between adjournment and action is presumptively unreasonable and triggers an analysis of the four factors elucidated in *Barker v. Wingo*, 407 U.S. 514 (1972), adopted in *Moreno*, 63 M.J. at 135. Those factors are "(1) the length of the delay; (2) the reasons for the delay; (3) whether the appellant made a demand for a speedy trial; and (4) prejudice to the appellant." *United States v. Mizgala*, 61 M.J. 122, 129 (C.A.A.F. 2005) (citing *Barker*, 407 U.S. at 530).

The first factor weighs in favor of Appellant; the length of the delay between adjournment and the corrected action is presumptively unreasonable and therefore satisfies the first *Barker* factor. *See Moreno*, 63 M.J. at 142. The second factor weighs against Appellant. The original action was taken within the *Moreno* standard. Approximately 75 days later, the Government became aware Appellant was being subjected to an improper debt collection and took prompt steps to remedy this situation through a corrected action issued approximately 30 days later. Third, although the Government carries the burden of primary responsibility for speedy post-trial processing, *United States v. Bodkins*, 60 M.J. 322, 323–24 (C.A.A.F. 2004), Appellant did not assert his right to speedy post-trial processing until now on appeal, never asserting this right during the time of this initial delay. Finally, on the fourth factor, Appellant fails to articulate any prejudice in this case.

When there is no showing of prejudice under the fourth factor, "we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *United States v. Toohey*, 63 M.J. 353, 362 (C.A.A.F. 2006). Having considered the totality of the circumstances and the entire record, when we balance the other three factors, we find the post-trial delay in this case is not so egregious as to adversely affect the public's perception of fairness and integrity of the military justice system. We are convinced the error is harmless beyond a reasonable doubt.

However, this does not end our analysis. Having conceded that he cannot articulate any prejudice, Appellant focuses us on a theory of relief which does not have that requirement. Article 66(c), UCMJ, 10 U.S.C. § 866(c), empowers appellate courts to grant sentence relief for excessive post-trial delay without the showing of actual prejudice required by Article 59(a), UCMJ, 10 U.S.C. § 859(a). *United States v. Tardif*, 57 M.J. 224 (C.A.A.F. 2002); *see also United States v. Harvey*, 64 M.J. 13, 24–25 (C.A.A.F. 2006). In *United States v. Gay*, 74 M.J. 736, 744 (A.F. Ct. Crim. App. 2015), we identified a list of factors to consider in evaluating whether Article 66(c), UCMJ, relief should be granted for post-trial delay. Those factors include how long the delay exceeded appellate review standards, the reasons for the delay, whether the government acted with bad faith or gross indifference, evidence of institutional neglect, harm to the appellant or to the institution, whether relief is consistent with the goals of both justice and good order and discipline, and whether this court can provide any meaningful relief. *Id.* No single factor is dispositive and we may consider other factors as appropriate. *Id.*

After considering the relevant factors in this case, we determine that no relief is warranted. We find there was no bad faith or gross negligence in the post-trial processing. We find no evidence of harm to the integrity of the military justice system. We have the authority to tailor an appropriate remedy without giving Appellant a windfall. *See Tardif*, 57 M.J. at 225. We have expressly considered whether we should reduce some or all of Appellant's sentence. Based on our review of the entire record, we conclude that sentence relief under Article 66, UCMJ, is not warranted.

*Conclusion*

The approved findings and sentence are correct in law and fact, and no error materially prejudicial to the substantial rights of Appellant occurred. Articles 59(a) and 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Accordingly, the approved findings and sentence are **AFFIRMED**.

FOR THE COURT

LEAH M. CALAHAN
Clerk of the Court