UNITED STATES of America,
Plaintiff–Appellee,

v.

Elton F. THOMAS, Mitchell D.
Osborne, Defendants–
Appellants.

No. 00–5426, 00–5831.

United States Court of Appeals,
Sixth Circuit.

Jan. 22, 2002.

Before RYAN, BOGGS, and DAUGHTREY, Circuit Judges.

RYAN, Circuit Judge.

Elton F. Thomas appeals his conviction alleging violation of his Sixth Amendment right to a speedy trial. Mitchell D. Osborne appeals his sentence alleging violations of the Fifth Amendment's Due Process Clause and error by the district court in calculating the sentence. Both of the defendants were convicted on federal charges stemming from a scheme to distribute crack cocaine. We conclude that the district court's judgment should be affirmed.

I.

Thomas and Osborne were involved in a plot to distribute crack cocaine in Bedford County, Tennessee. Thomas pled guilty to conspiring to distribute in excess of 50 grams of cocaine base (crack), in violation of 21 U.S.C. § 846. Osborne went to trial and was found guilty of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1).

The events leading to these convictions began when Thomas traveled from California to Tennessee with nine ounces of crack cocaine. Shortly after arriving, Thomas contacted Osborne and his girlfriend, Debra Hicks, to inform them that he had drugs to sell. Thereafter, Osborne approached a confidential informant (CI) alerting him to a supply of crack cocaine in Bedford County. Federal and state law enforcement agents, who compose the 17th

Judicial District Drug Task Force, arranged for the CI to make a controlled buy. The CI went to the trailer Osborne and Hicks shared, and Hicks informed the CI that she would have go to another location to purchase the crack. The CI volunteered the use of his vehicle while he waited at the trailer. Agents then observed Hicks driving in the CI's car to a hotel room rented by Thomas. She returned shortly with crack, and the sale was consummated between Hicks, Osborne, and the CI. With this information, agents arrested Thomas, Osborne, Hicks, and a fourth codefendant, Eric Gant. on both state and federal charges.

Thomas filed a motion to dismiss the indictment based on a three-month delay between the time of indictment and his initial appearance before the magistrate judge. Thomas also requested an evidentiary hearing on the matter. The government failed to file a response to Thomas's motion, despite the district court's request that it do so. Ultimately, however, the district court denied Thomas's motion. Upon Osborne's indictment, he moved to dismiss alleging that the CI's act of loaning Hicks his car constituted improper government conduct. The motion was denied.

At the conclusion of Osborne's trial, the district court held a hearing to determine an appropriate sentence. Based on testimony elicited at the hearing and the trial, the district court determined that Osborne was "accountable for at least the 9 ounces of cocaine base" that Thomas transported from California.

## II.

We turn initially to the defendants' arguments regarding their convictions. Upon review, it is clear, as we shall explain, that neither Thomas nor Osborne present claims sufficient to warrant reversal of their convictions, or, in Osborne's case, vacating his sentence.

## A.

Thomas argues that his Sixth Amendment right to a speedy trial was violated by post-indictment delay. Thomas was taken into state custody in May 1999 and was indicted on federal charges on June 22, 1999. He was not brought before a federal magistrate judge until September 13, 1999, at which time the federal arrest warrant was executed. He contends that despite the relatively short duration of the post-indictment delay, the circumstances of this case warranted an examination by the district court, which failed to hold a hearing on the matter.

"In determining whether a defendant's right to a speedy trial has been violated, an appeals court reviews questions of law de novo and questions of fact under the clearly erroneous standard." *United States v. Smith*, 94 F.3d 204, 208 (6th Cir.1996).

The Sixth Amendment guarantees defendants the right to a speedy trial. U.S. Const. amend. VI. The Supreme Court has provided a framework for analyzing speedy trial claims, holding that "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant" are all relevant factors used to determine whether the defendant's Sixth Amendment right has been violated. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Unless the length of delay is unreasonable, and thus presumptively prejudicial, the Sixth Amendment is not violated. *Smith*, 94 F.3d at 208–09 (citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182).

Although Thomas frames his appeal in terms of the district court's failure

to hold an evidentiary hearing, his argument is essentially a Sixth Amendment challenge. It is clear that under the test announced by *Barker*, Thomas cannot support his claim of a Sixth Amendment violation of his right to a speedy trial. A three-month, post-indictment delay does not trigger a presumption of prejudice. We held in *United States v. Howard*, 218 F.3d 556, 564 (6th Cir.2000), that "[a] delay of five months is not per se excessive under the Sixth Amendment"; and we have never found a three-month, post-indictment delay to raise a Sixth Amendment issue. *See, e.g., United States v. White*, 985 F.2d 271, 275 (6th Cir.1993); *United States v. Holyfield*, 802 F.2d 846, 848 (6th Cir.1986). Because Thomas fails to prove that his delay was presumptively prejudicial, the remaining *Barker* inquiry need not be conducted and his Sixth Amendment claim fails. *See Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

### B.

Osborne argues that the CI engaged in outrageous conduct attributable to the government when he loaned Hicks his car to purchase crack cocaine. Specifically, he contends that the CI's conduct amounted to a denial of his right to due process, and that, as a result, evidence of the sale should be suppressed, and his conviction should be overturned. The United States responds that Osborne's argument must be interpreted as one sounding in "inducement," the significance of which we explain, *infra.*

■ The "outrageous government conduct" defense presents a question of law to be reviewed *de novo*. *United States v. Warwick*, 167 F.3d 965, 974 (6th Cir. 1999). "Under the outrageous government conduct defense, conviction may be improper even if the evidence establishes a predisposition to commit the crime: this defense looks only at the government's conduct and determines whether it is sufficiently outrageous so as to violate the Constitution." *Id.* Four factors are taken into consideration when determining whether police conduct impinged constitutional due process protections: "(1) the need for the type of government conduct in relation to the criminal activity; (2) the preexistence of a criminal enterprise; (3) the level of the direction or control of the criminal enterprise by the government; [and] (4) the impact of the government activity to create the commission of the criminal activity." *United States v. Johnson*, 855 F.2d 299, 304–05 (6th Cir.1988).

The government argues that when a defendant alleges inducement, he must assert the defense of entrapment, which is confined to situations where the defendant can demonstrate no predisposition to commit the crime. As an initial matter, despite the government's claims to the contrary. Osborne's defense does not sound in inducement. Osborne concedes that he makes no assertion that he was induced to make any sale to the CI, and he admits he first approached the CI to gauge his interest in purchasing crack cocaine. Osborne is making the parity argument that the government should not be able to participate in activity for which private actors will be criminally culpable. Thus, we examine Osborne's argument to determine whether the government's conduct violated due process.

■ On its face, and according to the factors described in *Johnson*, Osborne's argument that the government violated the Due Process Clause when the CI loaned Hicks his vehicle is patently meritless. First, it is standard law enforcement practice for the police to use a confidential informant, or an undercover agent, to participate in a controlled narcotics buy. The

CI's conduct did nothing more than suggest to Osborne that the government agent was a willing participant in the illegal act, which is an essential element of a controlled buy. Second, the criminal enterprise was ongoing, and the CI was only one of many buyers of Osborne's drugs. There was a great deal of evidence indicating that Osborne had long been involved in selling crack from the trailer he shared with Hicks, and the government's actions did nothing to assist in that enterprise. Third, the government exercised no control over the commission of the crime. Osborne approached the CI with an offer to procure crack on his behalf, and it was only after Osborne's confederate, Hicks, indicated she would have to obtain the drugs from another location, that the CI volunteered his car for Hicks's use. Fourth, as stated, the criminal activity was ongoing prior to the CI's involvement. The government's activity had no effect on the commission of Osborne's crime. Osborne's due process rights were not offended in any respect.

### C.

■ As a final matter, Osborne contends that the trial court erred when it enhanced his sentence by attributing to him the nine ounces of cocaine base that Thomas transported to Tennessee. Osborne argues that he should be sentenced based on the .5 grams of cocaine on his person when he was arrested. He asserts that because he never worked jointly with his supplier, Thomas, the quantity of drugs possessed by his supplier is irrelevant.

■ The district court's determination of the amount of drugs for which a defendant is responsible is a factual finding which must be accepted unless clearly erroneous. *United States v. Wilson,* 168 F.3d 916, 921 (6th Cir.1999). The sentencing court may hold a defendant accountable for a specific quantity of drugs only if

the defendant is more likely than not responsible for a quantity greater than or equal to that amount. *United States v. Owusu,* 199 F.3d 329, 338 (6th Cir.2000). In determining the quantity of drugs attributable to a defendant, the court of appeals will defer to a district court's credibility determinations unless they have no foundation. *Id.* at 339.

For drug offenses, U.S.S.G. § 2D1.1 and the Drug Quantity Table determine a defendant's base offense level. Relevant sentencing conduct includes all reasonably foreseeable acts committed in furtherance of jointly undertaken criminal activity. U.S.S.G. § 1B1.3(a)(1)(B). A defendant is a member of "jointly undertaken criminal activity" if he is a part of a "criminal plan, scheme, endeavor, or enterprise undertaken by the defendant in concert with others, whether or not charged as a conspiracy." U.S.S.G. § 1B1.3, comment. (n.2). In particular:

> With respect to offenses involving contraband (including controlled substances), the defendant is accountable for all quantities of contraband with which he was directly involved and, in the case of a jointly undertaken criminal activity, all reasonably foreseeable quantities of contraband that were within the scope of the criminal activity that he jointly undertook.

*Id.* at (ii).

The district court determined that Osborne, Hicks, and Thomas were all members of a jointly undertaken criminal activity The court concluded that without the assistance of Osborne and Hicks, Thomas would have been unable to sell crack cocaine in Tennessee. As a critical member of Thomas's scheme, Osborne both furthered the criminal conduct and reasonably foresaw that Thomas would be transporting up to nine ounces of crack to Tennessee. The court's findings were based on the testimony of the CI, the co-

defendant Gant, and the law enforcement members of the task force. Gant's testimony indicated that with the counsel of Osborne and Hicks, Thomas decided he should rent a series of motel rooms from which to sell the drugs. As Gant described it, "[Thomas] had the crack and they had the customers." The trial court chose to credit Gant's testimony. We are satisfied that the district court did not clearly err in determining that nine ounces of cocaine base transported by Thomas from California should be attributed to Osborne for sentencing purposes. Therefore, we will not disturb the district court's calculation of Osborne's sentence.

## III.

For the reasons discussed above, we AFFIRM the convictions of Thomas and Osborne and AFFIRM the district court's sentence of Osborne.