### UNITED STATES

v.

### Michael ADAMS, Jr., Staff Sergeant (E–6), U.S. Marine Corps.

### NMCCA 200600767.

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 17 May 2001.

Decided 19 Dec. 2006.

Lt Darrin MacKinnon, JAGC, USN, Appellate Defense Counsel.

Lt Jason Lien, JAGC, USN, Appellate Government Counsel.

LT J.M. Hudson, JAGC, USN, Appellate Government Counsel.

Before WAGNER, Senior Judge, VINCENT, and STONE, Appellate Military Judges.

WAGNER, Senior Judge:

The appellant was convicted, pursuant to mixed pleas, by officer and enlisted members sitting as a general court-martial, of unauthorized absence, dereliction of duty, and five specifications of wrongful appropriation.[1] The members sentenced the appellant to confinement for 18 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

---

1. The offenses violated Articles 86, 92, and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 886, 892, and 921.

The appellant claims, in his sole assignment of error, that he was denied speedy post-trial processing of his court-martial when it took over five years to docket the record of trial with this court following trial.[2]

## Post–Trial Delay

■ While the Supreme Court has not addressed appellate delay as a due process violation, it has been generally held by the federal courts that egregious delay in post-trial processing can result in a due process violation. *Campiti v. Matesanz*, 186 F.Supp.2d 29, 43 (D.Mass.2002)("... seven of the Courts of Appeals have held that an appellate delay may constitute a due process violation under some circumstances."), *aff'd*, 333 F.3d 317 (1st Cir.2003). In reviewing claims of post-trial delay under either the Fifth or Fourteenth Amendment due process clauses, the appellate courts have applied the Supreme Court's Sixth Amendment analysis of pretrial delays as set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972).[3] *United States v. Hawkins*, 78 F.3d 348, 350 (8th Cir.1996); *Simmons v. Beyer*, 44 F.3d 1160, 1169 (3d Cir. 1995); *Hill v. Reynolds*, 942 F.2d 1494, 1497 (10th Cir.1991); *United States v. Antoine*, 906 F.2d 1379, 1382 (9th Cir.1990); *Simmons v. Reynolds*, 898 F.2d 865, 868 (2d Cir.1990); *Rheuark v. Shaw*, 628 F.2d 297, 303–04 (5th Cir.1980); *United States v. Johnson*, 732 F.2d 379, 381–82 (4th Cir.1984). The Court of Appeals for the Armed Forces has also applied the Sixth Amendment *Barker* analysis to the Fifth Amendment due process issues arising from post-trial delay in military courts-martial. *Toohey v. United States (Toohey I)*, 60 M.J. 100, 102 (C.A.A.F.2004).

**2.** The appellant asserts that he was denied speedy post-trial review of his court-martial because 2,206 days elapsed following sentencing before the record of trial was docketed with this court. The claim is in error, as the record reveals that 1,841 days elapsed between trial and docketing with our court, 1,666 days of which elapsed after the convening authority had taken action on the case.

**3.** Of the Federal Courts of Appeal, only the First Circuit has rejected the *Barker* factors as the required due process analysis for post-trial delay. *United States v. DeLeon*, 444 F.3d 41, 57 (1st

## 1. Supreme Court Speedy Trial Analysis

Recognizing that delay prior to trial could work either to a defendant's detriment or in a defendant's favor, the *Barker* court established a balancing test, with four enumerated factors for consideration in determining whether there had been a due process violation resulting from pretrial delay:

(1) the length of the delay;

(2) the reasons for the delay;

(3) the defendant's assertion of his right; and

(4) prejudice to the defendant.

*Barker*, 407 U.S. at 530, 92 S.Ct. 2182. The Supreme Court emphasized that the approach they set forth "is a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* Regarding the first factor, the length of the delay, the *Barker* court stated:

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is *presumptively prejudicial*, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, *the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case.* To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

*Id.* at 530–31, 92 S.Ct. 2182 (emphasis added)(footnote omitted). Absent a delay so lengthy relative to the complexity of the case that it triggers the presumption of some prejudice flowing from the delay, we need go no further into the analysis. Not every pre-

Cir.2006)("This circuit's requirement is that the defendant must show prejudice, and we will not presume prejudice from the length of the delay."). The First Circuit's rationale is based on the differences between Sixth Amendment speedy trial claims and Fifth and Fourteenth Amendment due process claims. They specifically note that the issues caused by delay on appeal are more limited than those arising from pretrial delay and opine that at least two of the *Barker* factors have little rationale in the appellate context.

trial delay, therefore, requires the appellate courts to conduct a *Barker* analysis. This position has support in the Courts of Appeal. *Palmer v. Clarke*, 408 F.3d 423, 435 (8th Cir.2005)("If the length of the delay cannot be said to be presumptively prejudicial, however, there is no deprivation of the speedy trial right.")(citing *Barker*, 407 U.S. at 530, 92 S.Ct. 2182). Absent a presumptive rule, this threshold determination must also be made only within the circumstances of a particular case, not from arbitrary time periods or general rules applicable to all cases. " 'The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances.' " *Barker*, 407 U.S. at 522, 92 S.Ct. 2182 (quoting *Beavers v. Haubert*, 198 U.S. 77, 87, 25 S.Ct. 573, 49 L.Ed. 950 (1905)).

Turning to the second factor, the reasons for the delay, the *Barker* court stated that "different weights should be assigned to different reasons." *Id.* at 531, 92 S.Ct. 2182. As examples, the Court provided that any "deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government," while any "more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." *Id.* The Court added, as a final note, that valid reasons, such as missing witnesses, "should serve to justify appropriate delay." *Id.*

In addressing the third factor, whether the defendant had asserted his right to a speedy trial, the Supreme Court set forth the following standard:

> The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Id.* at 531–32, 92 S.Ct. 2182.

Finally, with regard to the fourth *Barker* factor, the Court went on to say that preju-

dice "should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect." *Id.* at 532, 92 S.Ct. 2182. The Court then identified three such interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The *Barker* court found the potential impairment of the defendant's ability to defend himself the most serious and labeled it obvious prejudice. *Id.*

The Supreme Court had the opportunity to apply and further explain its own *Barker* factors in *Doggett v. United States*, 505 U.S. 647, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). In discussing the presumption of prejudice as a triggering mechanism for the application of a full speedy trial analysis, the Supreme Court stated that:

> Simply to trigger a speedy trial analysis, an accused must allege that the interval between accusation and trial has crossed the threshold dividing ordinary from "presumptively prejudicial" delay, ... since, by definition, he cannot complain that the government has denied him a "speedy" trial if it has, in fact, prosecuted his case with customary promptness. If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.... This latter enquiry is significant to the speedy trial analysis because, as we discuss below, the presumption that pretrial delay has prejudiced the accused intensifies over time.

*Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686 (citing *Barker*, 407 U.S. at 530–31 and 533–34, 92 S.Ct. 2182) (citations omitted).

The Court also noted that, as the term is used as a threshold triggering a speedy trial analysis, " 'presumptive prejudice' does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay *unreasonable enough* to trigger the *Barker* enquiry." *Id.* at 652 n. 1, 112 S.Ct. 2686 (citing Uviller, *Barker v. Wingo:* Speedy Trial Gets a Fast Shuffle, 72 Colum. L.Rev. 1376, 1384–1385 (1972)(em-

phasis added)). The Supreme Court uses the term "unreasonable" not as threshold standard in and of itself, but rather as a tool for measuring when delay becomes *so* unreasonable as to give rise to a presumption of prejudice. This is significant, because a plain reading of this statement indicates that there must be some delay that, although deemed unreasonable, is not so unreasonable as to give rise to a presumption of prejudice and thus, trigger a speedy trial analysis. The unreasonableness of the delay, in conjunction with the unique circumstances of each case, is, therefore, simply the yardstick with which the courts measure when a presumption of prejudice exists, triggering further analysis. Under *Barker* and *Doggett*, a presumption of prejudice, however slight or weighty, must be established in order for the reviewing court to find that the threshold showing has been met and that a full speedy trial analysis is required. *Id.* at 651–52, 112 S.Ct. 2686.

In addition, the Supreme Court stated that a finding of presumptive prejudice, while triggering a speedy trial analysis, does not support a conclusion that a speedy trial violation has occurred without first balancing all four *Barker* factors. *Id.* at 655, 112 S.Ct. 2686. The Court goes on to emphasize, however, that such a presumption "is part of the mix of relevant facts, and its importance increases with the length of delay." *Id.* at 656, 112 S.Ct. 2686.

Based upon the Supreme Court's application of the *Barker* factors in *Doggett*, we conclude that the Supreme Court intended to establish a triggering mechanism for further speedy trial analysis and that the later passage in *Barker* refers only to balancing the four factors once the condition precedent is met, that is, delay that is so lengthy, based on the complexity of the case, as to be presumptively prejudicial. *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686 ("If the accused makes this showing, the court must then consider, as one factor among several, the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim.").

In distinguishing a presumption of prejudice sufficient to establish the need for a speedy trial analysis from presumed or actual prejudice sufficient to show a speedy trial violation, it is necessary to acknowledge that there is an identifiable difference between possible prejudice and actual prejudice. This distinction between possible and actual prejudice has been recognized by the Supreme Court: "The law has provided other mechanisms to guard against possible as distinguished from actual prejudice resulting from the passage of time between crime and arrest or charge." *United States v. Marion,* 404 U.S. 307, 322, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). Ultimately, the significance of the presumption of prejudice cannot be weighed or determined to be unrebutted until it is balanced against the remaining *Barker* factors. Additionally, while the possibility of prejudice is sufficient to establish a presumption of prejudice sufficient to trigger the speedy trial analysis under *Barker*, in the absence of a showing of actual prejudice under the fourth factor, an unrebutted and significant presumption of prejudice flowing from the first factor is required to support a finding of a speedy trial violation.

The presumption of prejudice, then, that triggers a speedy trial analysis under the first factor, is not automatically afforded sufficient weight by its very existence to support the finding of a speedy trial violation. However, actual prejudice can be established either by a demonstration of specific prejudice or from an unrebutted, significant presumption of prejudice. The mere possibility that prejudice may exist is sufficient to trigger the *Barker* speedy trial analysis, but such a meager presumption, standing alone and without a showing of specific prejudice flowing from the delay, will be insufficient to demonstrate a speedy trial violation under the Sixth Amendment. Support for this application of *Barker* can be found in the Courts of Appeal: "Thus, the courts have great reluctance to find a speedy trial deprivation where there is no substantial and demonstrable prejudice." *United States v. Nelson–Rodriguez,* 319 F.3d 12, 61 (1st Cir. 2003). On the other hand, there may be circumstances in a particular case where extreme delay in bringing an accused to trial may give rise to a presumption of prejudice

under the first factor so weighty that, standing alone, if left unrebutted, will give rise to a speedy trial violation even after balancing against the remaining *Barker* factors, even in the absence of any specific prejudice.

### Application of the *Barker* Factors to Speedy Review

■ Our superior court first applied the *Barker* factors to post-trial delay in *Toohey I*, decided in 2004.[4] "The first step in evaluating appellate delay is to determine whether the 'length of delay' triggering mechanism has been pulled." *Toohey I*, 60 M.J. at 102. In *Toohey*, the court stated that there is a "threshold showing" that must be met in order to require any further due process analysis. *Id.* at 103. In defining this threshold showing, however, the court did not use the language articulated by the Supreme Court in *Barker*, 407 U.S. at 530, 92 S.Ct. 2182, and subsequently followed by the Supreme Court in *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686, "delay which is *presumptively prejudicial.*" (emphasis added). The Court of Appeals for the Armed Forces, citing *United States v. Smith*, a Sixth Circuit case, defined this threshold showing as "a period of delay that appears, on its face, to be *unreasonable under the circumstances.*" *Toohey I*, 60 M.J. at 102 (quoting *United States v. Smith*, 94 F.3d 204, 208–09 (6th Cir.1996)(quoting *Barker*, 407 U.S. at 530, 92 S.Ct. 2182)(emphasis added)).

In doing so, our superior court appears to have established a threshold requirement that is considerably lower than the standard established in *Barker*. First, as stated above, we note the language used by the Supreme Court in the *Doggett* opinion that the *Barker* analysis is triggered only when delay is deemed so unreasonable that it gives rise to a presumption of prejudice. *Doggett*, 505 U.S. at 652, 112 S.Ct. 2686. This language implicitly presumes that there is some measure of unreasonable delay not egregious enough to give rise to even the most negligible presumption of prejudice. In fact, the

term "presumptively prejudicial" has been uniformly associated with situations giving rise to the possibility that harm in the form of prejudice may have occurred. *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686; *United States v. Mendoza–Lopez*, 481 U.S. 828, 845, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987)(referring to a trial judge's failure to engage respondents in an extended colloquy concerning suspension of their deportations); *Rose v. Clark*, 478 U.S. 570, 586, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986)(whether a presumptively prejudicial error could be deemed harmless). The common usage of the term "on its face," on the other hand, is to express something that can be readily discerned from examining the language or record before the court, without the benefit of extensive fact-finding or in-depth legal analysis. *See, generally, Smith v. City of Jackson*, 544 U.S. 228, 266, 125 S.Ct. 1536, 161 L.Ed.2d 410 (2005)(referring to a Federal regulation); *Wainwright v. Sykes*, 433 U.S. 72, 107, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977)(Federal judiciary is not bound by state rules of procedure that are unreasonable on their face); *Storer v. Brown*, 415 U.S. 724, 761, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974)(referring to a party's position before the Court); *United States v. Morgan*, 346 U.S. 502, 518, 74 S.Ct. 247, 98 L.Ed. 248 (1954)("Respondent has not sought to explain his long delay in seeking to set aside the federal judgment, and twelve years' delay would appear to be unreasonable on its face, absent unusual circumstances which are not shown to be present here."). The common usage of these terms, then, lends no support to a conclusion that a delay "unreasonable on its face" is the same as a delay that is "presumptively prejudicial."

The Sixth Circuit, however, appears to hold that the two terms are synonymous. In a case involving speedy trial, the court stated that "[t]he first factor is a threshold requirement, and if the delay is not uncommonly long, judicial examination ceases." *United States v. Robinson*, 455 F.3d 602, 607 (6th

---

4. The Court of Appeals for the Armed Forces first applied the *Barker* factors to a pretrial delay case in 1973. *United States v. Marshall*, 47 C.M.R. 409, 1973 WL 14746 (C.M.A.1973). For some time thereafter, however, the Court did not apply the *Barker* factors to post-trial delay, even in

cases where they cited *Barker* as authority in speedy trial issues in the same opinions. *United States v. Johnson*, 3 M.J. 143 (C.M.A.1977); *United States v. Gray*, 47 C.M.R. 484, 1973 WL 14764 (C.M.A.1973).

**558**

Cir.2006). In *United States v. Thomas*, 28 Fed.Appx. 427, 429 (6th Cir.2002), the Sixth Circuit stated that "[u]nless the length of delay is unreasonable, and thus presumptively prejudicial, the Sixth Amendment is not violated." We must assume, also, that the Court of Appeals for the Armed Forces considers them the same for purposes of post-trial delay and that any unreasonable delay raises some presumption of prejudice sufficient to trigger the *Barker* analysis. Despite our reservations regarding the application of such a sweeping threshold standard, since our superior court has adopted the *Smith* threshold standard and being bound by the precedential holdings of our superior court, we must apply that standard in this case. *United States v. Kelly*, 45 M.J. 259, 262–63 (C.A.A.F.1996). Based on our reading of the Supreme Court cases and the majority of federal appellate court cases, we would encourage reconsideration by our superior court of the threshold standard triggering application of a due process analysis set forth in *Toohey, Moreno*, and subsequent decisions in favor of the threshold established in *Barker*, or, in the alternative, request that the threshold standard be clarified.

### Application of the *Barker* Analysis to the Facts

■ Considering the facts before us, we conclude that the delay in this case is unreasonable on its face, mandating a due process analysis regardless of whether that delay is so unreasonable that it raises a presumption of prejudice. *Toohey I*, 60 M.J. at 103. We also conclude that the delay of five years in processing this case for appellate review, in light of the 357–page record of trial, with few, if any, complexities, is so unreasonable that prejudice flowing from it is possible and thus, gives rise to a presumption of prejudice. *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182; *Doggett*, 505 U.S. at 651–52, 112 S.Ct. 2686.[5] In reaching our decision, we do not employ any rigid time period in determining when such a presumption arises. We note that, while the *Barker* court considered and rejected establishing such rigid time periods for assessing speedy trial, the Court also noted that "Nothing we have said should be interpreted as disapproving a presumptive rule adopted by a court in the exercise of its supervisory powers which establishes a fixed time period within which cases must normally be brought." *Barker*, 407 U.S. at 530 n. 29, 92 S.Ct. 2182.[6]

■ The Court of Appeals for the Armed Forces has established a presumptive rule for cases involving post-trial delay. The rule is prospective and does not apply to the appellant's case. *See United States v. Moreno*, 63 M.J. 129, 142 (C.A.A.F.2006).[7] For cases such as the appellant's, which are "not encompassed by the foregoing presumptions of unreasonable delay," the Court of Appeals for the Armed Forces has stated that they "will continue to be reviewed on a case-by-case basis under the *Barker* due process analysis." *Id.* at 143.

Looking at the first *Barker* factor, we note that, of the five-year delay, 1,666 days elapsed after the convening authority had taken action on the case. This is the "least

5. While the facts presented in this case allow us to easily cross both the "facially unreasonable" and "presumption of prejudice" thresholds, we are concerned with the possibility that a subsequent case may present a delay that is facially unreasonable, but not so unreasonable that it gives rise to a presumption of prejudice.

6. The 10th Circuit has established a judicial rule for the presumption of prejudice wherein "a two-year delay in finally adjudicating a direct criminal appeal ordinarily will give rise to a presumption of inordinate delay that will satisfy this first factor in the balancing test." *Harris v. Champion*, 15 F.3d 1538, 1560 (10th Cir.1994).

7. "For those cases arriving at the service Courts of Criminal Appeals thirty days after the date of this decision, we will apply a presumption of

unreasonable delay where appellate review is not completed and a decision is not rendered within eighteen months of docketing the case before the Court of Criminal Appeals. These presumptions of unreasonable delay will be viewed as satisfying the first Barker factor and they will apply whether or not the appellant was sentenced to or serving confinement. It is important to note that the presumptions serve to trigger the four-part Barker analysis—not resolve it. The Government can rebut the presumption by showing the delay was not unreasonable. By using these presumptions we trigger an appellate analysis and allocate the burden; we do not legislate or undermine the President's rulemaking authority under Article 36, UCMJ, 10 U.S.C. § 836 (2000)." *Moreno*, 63 M.J. at 142–43.

defensible" of delays and "worthy of the least patience." *United States v. Dunbar*, 31 M.J. 70, 73 (C.M.A.1990). In *Dunbar*, as we see here, there were "no complex legal or factual issues or weighing of policy considerations" and the only conclusion that can be drawn from the delay is "[g]ross negligence—pure and simple." *Id.* This factor weighs heavily in favor of the appellant.

Turning to the second *Barker* factor, the Government advances no reason for the delay. The lack of any explanation for the delay makes the Government's gross negligence in processing the record of trial appear to border on contempt for the importance of the appellate process itself.[8] This factor also weighs heavily in the appellant's favor.

Considering the third factor, the appellant did not state his desire for speedy review until filing his brief and assignment of error with this court on 30 June 2006, more than five years from the date of his sentencing. The lack of any timely demand for speedy review by the appellant, while not barring finding a due process violation, should mitigate heavily against it. *Barker*, 407 U.S. at 531–32, 92 S.Ct. 2182. Our superior court, however, has declined to hold the appellant responsible for failing to complain about dilatory processing of the record of trial. *Moreno*, 63 M.J. at 138 ("The obligation to ensure a timely review and action by the convening authority rests upon the Government and Moreno is not required to complain in order to receive timely convening authority action. Similarly, Moreno bears no responsibility for transmitting the record of trial to the Court of Criminal Appeals after action.") (citation omitted). The heavy weight accorded to the appellant's failure to timely demand post-trial review established by *Barker* has been diminished by the holding in *Moreno*, where the delay is occasioned by the failure of the Government to exert "institutional vigilance."

*United States v. Harvey*, 64 M.J. 13, 23 (C.A.A.F.2006). Under the guidance of our superior court, we conclude that this factor weighs against the appellant, but under the circumstances of this case, not heavily. *Harvey*, 64 M.J. at 23; *Moreno*, 63 M.J. at 138.

Finally, considering the fourth factor, prejudice, we note that the appellant's brief makes certain claims regarding prejudice, but also note that there are no factual matters in the record of trial to support those claims. We do not consider statements contained in appellate briefs that are not drawn from facts established in the record. Even assuming, *arguendo*, that we were to consider the arguments of counsel from the appellate brief as fact, the information is too speculative and is entirely insufficient to establish prejudice flowing from the delay. *See United States v. Jones*, 61 M.J. 80, 85 (C.A.A.F.2005)(holding that unrebutted affidavits describing how the appellant's lack of a discharge certificate prevented him from being considered for employment established prejudice).

The appellant raises no errors before us other than post-trial delay. There is no evidence, therefore, that he was prejudiced by suffering oppressive incarceration pending appeal. *Moreno*, 63 M.J. at 139. Neither does the appellant demonstrate that he has experienced "particularized anxiety or concern that is distinguishable from the normal anxiety experienced by prisoners awaiting an appellate decision" such that he has suffered prejudice in the form of "constitutionally cognizable anxiety." *Id.* at 140. Finally, the appellant has asserted no error requiring a rehearing, nor does he establish how he would be prejudiced by the delay in the event of a rehearing. *Id.* The appellant has, therefore, presented no factual claim of prejudice suffered as a result of the delay.

8. The Court of Appeals for the Armed Forces has made very clear the obligation on the part of the Government to provide *some* explanation for significant delays. The failure of the Government in this case to at least put in a minimal effort in providing some reason for the extensive delay in delivering this record to the court is unconscionable. *Moreno*, 63 M.J. at 142 ("Some cases will present specific circumstances warranting additional time, thus making those periods reasonable upon assessment of the *Barker* factors. But these must be justifiable, case-specific delays supported by the circumstances of that case and not delays based upon administrative matters, manpower constraints or the press of other cases. We expect convening authorities, reviewing authorities and the Courts of Criminal Appeals to document reasons for delay and to exercise the institutional vigilance that was absent in Moreno's case.").

Although the Supreme Court held in *Barker* that no single factor of the four could be required to establish a due process violation, the appellate courts have been loathe to find a due process violation absent a significant showing of prejudice. *See, e.g., Smith,* 94 F.3d at 211; *Harris v. Champion,* 15 F.3d 1538, 1559 (10th Cir.1994); *United States v. Tucker,* 8 F.3d 673, 676 (9th Cir.1993); *Simmons v. Reynolds,* 898 F.2d 865, 868 (2d Cir.1990); *Burkett v. Cunningham,* 826 F.2d 1208, 1219–21 (3d Cir.1987); *United States v. Johnson,* 732 F.2d 379, 381–82 (4th Cir.1984). Alternatively, our superior court has held that the first, second, and third *Barker* factors can be balanced against each other, even in the absence of any finding of prejudice, and result in a due process violation where the delay, under all the circumstances in the case, "is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Harvey,* 64 M.J. at 24 (quoting *Toohey II,* 63 M.J. at 361). In *Toohey II,* the court stated:

> Toohey's case presents us with the question of how to strike this due process balance in the absence of any finding of prejudice under the fourth *Barker* factor. We believe that such circumstances warrant a different balancing of the four factors. Hence, where there is no finding of *Barker* prejudice, we will find a due process violation only when, in balancing the other three factors, the delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system.

63 M.J. at 362. The *Toohey* court goes on to balance "these three factors against the absence of prejudice." *Id.*

We would respectfully suggest that any delay "so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system" would be so unreasonable by that definition that it would raise a presumption of prejudice under the first *Barker* factor. *Id; United States v. Thomas,* 55 F.3d 144, 149–50 (4th Cir.1995)(finding that a *Barker* analysis is required even where there is no evidence of actual prejudice resulting from

the delay and that the length of the delay and the fact that a "presumptive inquiry" is required favor finding a violation.) The weight afforded to such a presumption of prejudice, due to the passage of time, especially where the passage of time is great enough to call into question the integrity of the military justice system, must then be afforded significant weight. *Doggett,* 505 U.S. at 652, 112 S.Ct. 2686; *Wilson v. Mitchell,* 250 F.3d 388, 396 (6th Cir.2001)(". . . the longer the delay that is traceable to the state's conduct, the more prejudice that will be presumed.").

In assessing prejudice flowing from the delay, we are mindful of the Supreme Court's clear guidance to us in assessing the strength of the presumption of prejudice relative to the length of the delay. *Doggett,* 505 U.S. at 652, 112 S.Ct. 2686 (citing *Barker,* 407 U.S. at 534, 92 S.Ct. 2182)("[p]resumption that pretrial delay has prejudiced the accused intensifies over time. . . ."); *United States v. Taylor,* 487 U.S. 326, 340–41, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988)("The longer the delay, the greater the presumptive or actual prejudice to the defendant. . . ."). The five-year delay under the circumstances of this case is certainly more than *de minimus* and weighs in favor of the appellant. In addition, we note that our superior court has held that, even in the absence of any specific prejudice, "a two-year delay in commencing review under Article 66(c), UCMJ, can diminish the public's perception of the fairness of military justice," and lead to the conclusion that the appellant was denied his due process right to speedy review and appeal. *United States v. Gosser,* 64 M.J. 93 (C.A.A.F.2006).

We have balanced the *Barker* factors and conclude that the circumstances of the delay in this case did rise to the level of a due process violation. The length of the delay, the relatively simple record of trial, the lack of appellate issues, the absence of any explanation or justification for the delay, the Government's gross negligence and lack of institutional vigilance in processing the record of trial, and the presumption of prejudice, which has intensified over the passage of time, all weigh in favor of the appellant's cause. Only the appellant's failure to assert a timely de-

mand for speedy review weighs against the appellant and we are directed by the decisions of our superior court not to afford this factor great weight. *Harvey,* 64 M.J. at 24.

■ Not every due process violation, however, automatically results in relief. We must consider constitutional errors as falling within one of two categories: those so fundamental to the integrity of the justice system itself that their denial demands relief and those other constitutional errors where relief is predicated upon application of a harmless error analysis. *Arizona v. Fulminante,* 499 U.S. 279, 309, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991). Most constitutional errors fall under the second category.[9] *Id.* at 306, 111 S.Ct. 1246.

■ In the first category, there are some constitutional rights that are so basic to fairness in the trial and appellate process that "their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). These "structural defects in the constitution of" the judicial system "defy analysis" under a harmless-error standard. *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246. Examples are the unlawful exclusion of members of the defendant's race from a grand jury, *Vasquez v. Hillery,* 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); the right to a public trial, *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); the right to self-representation at trial, *McKaskle v. Wiggins,* 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); the complete denial of the right to counsel, *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963); having an impartial judge, *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). "Without these basic protections, a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." *Rose v. Clark,* 478 U.S. 570, 577–78, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986) (citation omitted). We find no precedent establishing the denial of speedy review as a constitutional error falling into this first category. The Supreme Court has recognized that the instances of this first type of constitutional error exist only in a very limited number of cases. *Neder v. United States,* 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999).

Turning then, to the second category of constitutional error, we are required, where a due process violation is found, to subject that error to a harmless error analysis in order to determine what, if any, relief is demanded.[10] *United States v. Rodriguez–Rivera,* 63 M.J. 372, 386 (C.A.A.F.2006). Because the due process error is one of constitutional magnitude, the burden shifts to the Government to " 'show that this error was harmless beyond a reasonable doubt.' " *Harvey,* 64 M.J. at 25 (quoting *United States v. Brewer,* 61 M.J. 425, 432 (C.A.A.F.2005))(quoting *United States v. Miller,* 47 M.J. 352, 359–60 (C.A.A.F.1997)). If the reviewing court determines that the error was harmless beyond a reasonable doubt, no relief is warranted. *Rodriguez–Rivera,* 63 M.J. at 386. The Supreme Court has described this test as requiring the courts, before an error can be held harmless, to "be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman,* 386 U.S. at 24, 87 S.Ct. 824. In determining whether the error is harmless beyond a reasonable doubt, we are

9. "Only in rare cases has this Court held that an error is structural, and thus requires automatic reversal. In such cases, the error 'necessarily renders a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence.' " *Washington v. Recuenco,* 548 U.S. 212, 126 S.Ct. 2546, 2551, 165 L.Ed.2d 466 (2006)(quoting *Neder v. United States,* 527 U.S. 1, 9, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999))(emphasis omitted).

10. In fact, as a general matter we are free to dispose of a due process issue by making an initial determination that any error is harmless beyond a reasonable doubt under the circumstances of an individual case. *United States v. Rodriguez–Rivera,* 63 M.J. 372, 386 (C.A.A.F. 2006)("As a general matter, we can dispose of an issue by assuming error and proceeding directly to the conclusion that any error was harmless."); *United States v. Allison,* 63 M.J. 365, 370–71 (C.A.A.F.2006)("[I]n cases involving claims that an appellant has been denied his due process right to speedy post-trial review and appeal, we may look initially to whether the denial of due process, if any, is harmless beyond a reasonable doubt.").

to apply a totality of the circumstances test and consider all of the relevant facts before us *de novo.* *Toohey,* 63 M.J. at 363.

In applying the foregoing to the facts of this case, we place no burden on the appellant to present any evidence that he suffered harm from the error. Likewise, while the burden on the Government to establish that the error was harmless is heavy, the Government may rely on the record as a whole to establish that the error was harmless beyond a reasonable doubt. The Supreme Court has "repeatedly reaffirmed the principle that an otherwise valid conviction should not be set aside if the reviewing court may confidently say, on the whole record, that the constitutional error was harmless beyond a reasonable doubt." *Delaware v. Van Arsdall,* 475 U.S. 673, 681, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). Such is the case here.

In this case, we can find no evidence of actual harm or specific prejudice flowing from the delay. We are left to rely on the presumption of prejudice that arises from the length of the delay itself. Here, we can, and do, consider the appellant's failure to make any demand for a speedier resolution of his post-trial processing as rebutting, to some extent, that presumption. In addition, the record reveals no appellate issue that would afford relief to the appellant. The appellant has suffered no oppressive incarceration from the delay, nor has he experienced particularized anxiety from the delay. No rehearing has been ordered at which the delay might become a factor. Under the totality of the circumstances of this case, we conclude that the error was harmless beyond a reasonable doubt.

Our superior court has recently held, in a case involving a similar five-year delay in appellate processing, that no harm resulted from the due process violation. *United States v. Allison,* 63 M.J. 365, 370–71 (C.A.A.F.2006). Likewise, no relief is warranted here. Any relief awarded the appellant in this case on the basis of the due process violation would be punitive in nature in response to the Government's cavalier post-trial processing of this and other similar courts-martial and would result in an undeserved windfall for the appellant.

## Delay as a Factor Under Article 66, UCMJ

For the service courts of criminal appeals, however, the analysis of post-trial delay does not end with the due process analysis. Because we are required to determine, in every case before us, what findings and sentence should be approved based on all the circumstances in the record, we must consider the delay in post-trial processing as one factor in that determination. We have published the factors we consider in making such a determination. *United States v. Brown,* 62 M.J. 602 (N.M.Ct.Crim.App.2005)(en banc). The crimes of which the appellant stands convicted are serious and certainly deserving of harsh punishment. On the other hand, the Government's gross negligence and failure to exercise diligence in processing this simple case resulted in a lengthy and unnecessary delay in the appellant receiving appellate review and finality of his court-martial sentence. On the whole, however, we do not believe that the delay affects the findings and sentence we should affirm under Article 66, UCMJ.

## Conclusion

The findings of guilty and sentence, as approved by the convening authority, are affirmed.

Judge VINCENT and Judge STONE concur.