**UNITED STATES**

v.

**Arnold S. BREDSCHNEIDER,**
**Private First Class (E–2),**
**U.S. Marine Corps.**

**NMCCA 200700025.**

U.S. Navy–Marine Corps Court
of Criminal Appeals.

Sentence Adjudged 10 Jan. 2000.

Decided 23 Aug. 2007.

Capt William Harbeson, JAGC, USN, Appellate Defense Counsel.

LT Justin E. Dunlap, JAGC, USN, Appellate Government Counsel.

CDR M.G. Miller, JAGC, USN, Appellate Government Counsel.

Before ROLPH, Chief Judge, WAGNER, Senior Judge, and KOVAC, Appellate Military Judge.

KOVAC, Judge.

A military judge sitting as a general court-martial convicted the appellant, pursuant to his pleas, of larceny, transporting a machine-gun in interstate commerce, and possessing a firearm not registered to him in the National Firearms Registration and Transfer Record, in violation of Articles 121 and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 921 and 934. The appellant was sentenced to confinement for 18 months, forfeiture of all pay and allowances, reduction to pay grade E–1, and a bad-conduct discharge. The convening authority approved the sentence as adjudged.

In his sole assignment of error, the appellant alleges that his right to speedy post-trial review was materially prejudiced by the seven-year delay in post-trial processing. As relief, the appellant asks the court to disapprove the findings and sentence.

We have carefully reviewed the record of trial and pleadings of counsel. We find that the post-trial delay in this case violated the appellant's due process rights and that harm resulted. Additionally, we find that the appellant's plea to the Additional Charge of possessing a firearm is not supported by law and fact and it will be set aside. After reassessing the sentence, we will grant relief for the due process violation as explained in further detail below.

### Post–Trial Delay

In a post-trial delay analysis, the first question to resolve is whether the particular delay is "facially unreasonable." *United States v. Young,* 64 M.J. 404, 408 (C.A.A.F.2007)(citing *United States v. Moreno,* 63 M.J. 129, 136 (C.A.A.F.2006)). In *Moreno,* our superior court recognized a presumption of unreasonable delay under the following circumstances:

> For courts-martial completed thirty days after the date of this opinion [11 May 2006], we will apply a presumption of unreasonable delay ... where the action of the convening authority is not taken within 120 days of the completion of trial. We will apply a similar presumption of unreasonable delay for courts-martial completed

thirty days after the date of this opinion where the record of trial is not docketed by the service Court of Criminal Appeals within thirty days of the convening authority's action.

*Id.* at 142. In this case, the presumption of unreasonable delay does not apply because the appellant's court-martial was completed prior to the *Moreno* decision. Nevertheless, we find that the extreme delay in this case (2,571 days from completion of the appellant's court-martial (10 January 2000) until docketing with this court (24 January 2007)) is facially unreasonable. Once we determine the delay is facially unreasonable, a further due process review is necessary. *Young,* 64 M.J. at 408.

Our due process review involves the consideration and balancing of the four factors set forth in *Barker v. Wingo,* 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) the length of the delay; (2) the reasons for the delay; (3) the appellant's assertion of the right to a timely appeal; and (4) the prejudice to the appellant. *United States v. Jones,* 61 M.J. 80, 83 (C.A.A.F.2005); *Toohey v. United States,* 60 M.J. 100, 102 (C.A.A.F. 2004). Each factor must be analyzed and balanced to determine if it favors the Government or the appellant. *Moreno,* 63 M.J. at 136. No single factor is necessarily dispositive. *Id.* If this analysis leads to the conclusion that the appellant's due process right to a speedy post-trial review has been violated, "we grant relief unless this court is convinced beyond a reasonable doubt that the constitutional error is harmless." *Young,* 64 M.J. at 409 (quoting *United States v. Toohey,* 63 M.J. 353, 363 (C.A.A.F.2006)).

The first and second factors under this analysis clearly weigh against the Government. As noted above, the appellant was sentenced on 10 January 2000. His case then lingered for over seven years prior to docketing with this court on 24 January 2007. The length of this delay is unreasonable and excessive. The Government provides no ex-

planation for the delay but concedes that it is unreasonable and without excuse.

Under the third factor, we find no evidence in the record that the appellant asserted his right to a timely appeal prior to his affidavit, dated 26 February 2007, which was filed in support of his brief to this court. Accordingly, we find that the third factor weighs against the appellant, however, not heavily. *See Moreno,* 63 M.J. at 138 (finding that although the appellant did not assert his right to timely review, this factor would not weigh heavily against him due to the Government's post-trial review responsibilities).[1]

As to the fourth factor, prejudice, the appellant asserts that he was denied employment opportunities at Meijer's, Lowes, and Wal–Mart and was denied unemployment assistance because he did not have a DD–214. The appellant contends that he is still without a job and must rely on part-time jobs in his father's construction company. However, the appellant's claim of prejudice is diminished by numerous documents in the record indicating that upon release from confinement, he intended to work solely for his father's construction company and assist the family in managing various rental properties. *See, e.g.,* Defense Counsel's Clemency Request of 1 Nov 2000 (indicating in ¶ 4 the appellant had a job waiting for him at his father's construction company); Appellant's Clemency Letter (undated) (indicating in ¶ 4 that he was supposed to "take over the family business"); Mrs. Bredschneider's Clemency Letter of 18 Sep 2000 (indicating in ¶ 3 that the family was counting on the appellant to assume responsibilities for the family business including management of rental properties). In his affidavit, executed on 26 February 2007, the appellant indicates that his father's business is still functioning and provides him with part-time job opportunities. Given this evidence, we find the absence of a DD–214 to have had no prejudicial impact

1. We also note that on 10 January 2000, the appellant signed an "Appellate Rights Statement," informing him of his various appellate rights and the post-trial review process. The Appellate Rights Statement also provides the address to the Appellate Defense Division and noti-

fication that he is entitled to an appellate defense counsel. Accordingly, there should be no doubt that the appellant had adequate notice concerning the appropriate authority to contact if he was concerned about the delay in the post-trial processing of his case.

upon the appellant.[2]

■ After weighing the four *Barker* factors, we conclude that the appellant has not suffered a *Barker-type* post-trial due process violation. However, even without specific prejudice, a due process violation may result if the "delay is so egregious that tolerating it would adversely affect the public's perception of the fairness and integrity of the military justice system." *Toohey,* 63 M.J. at 362. We conclude that over seven years to docket this 77–page, fairly uncomplicated record of trial is egregious. Moreover, the lack of any explanation by the Government for this extraordinarily long delay weighs heavy in our analysis. Tolerating such a delay would adversely affect the public's perception of the high standards of our military justice system. Accordingly, we find that the appellant was denied his due process right to speedy review and appeal, even without a specific showing of significant prejudice.

■ Having found constitutional error in this case, we must now subject this case to a harmless error analysis in order to determine what, if any, relief is required. *United States v. Rodriguez–Rivera,* 63 M.J. 372, 386 (C.A.A.F.2006). The burden now shifts to the Government to demonstrate that the error was harmless beyond a reasonable doubt. *United States v. Harvey,* 64 M.J. 13, 25 (C.A.A.F.2006). "[T]he Government may rely on the record as a whole to establish that the error was harmless beyond a reasonable doubt." *United States v. Adams,* 65 M.J. 552, 562 (N.M.Ct.Crim.App.2006). In determining whether the error is harmless, we are required to apply a totality of circumstances test considering all the relevant facts before us *de novo. Id.* (citing *Toohey,* 63 M.J. at 363).

Here, we consider the failure of the appellant to make any demands for speedier resolution of his case prior to his 26 February 2007 affidavit. We also question the appellant's claim of lost employment opportunities for the reasons explained above. On the other hand, a seven-year delay is unusually long, particularly vexing to the court, and most assuredly to outsiders who might question the integrity of our military justice system in light of this delay. Because we are not convinced beyond a reasonable doubt that the due process violation in this case was harmless, we will grant relief.

Prior to announcing our relief, however, we consider the impact upon the sentence, if any, of the appellant's conviction under the Additional Charge which we must set aside for the reasons explained in the next section.

### Possession of Unregistered Firearm

■ Our review of the record requires us to set aside the finding of guilty to the Additional Charge (Article 134, wrongfully possessing an unregistered firearm) because the record shows a substantial basis in law and fact for questioning the appellant's guilty plea. Specifically, the appellant's possession of unregistered M80 firecrackers does not constitute a crime under 26 U.S.C. § 5861(d), charged as a violation of Article 134, UCMJ.

The standard of review to determine whether a guilty plea is provident is whether the record of trial reveals a substantial basis in law and fact for questioning the plea. *United States v. Harris,* 61 M.J. 391, 398 (C.A.A.F.2005)(citing *United States v. Prater,* 32 M.J. 433, 436 (C.M.A.1991)). An appellate court reviews a military judge's decision to accept a guilty plea "for an abuse of discretion." *United States v. Eberle,* 44 M.J. 374, 375 (C.A.A.F.1996). In order to find the plea improvident, this court must conclude that there has been an error prejudicial to

2. In *Jones,* our superior court found prejudice where the appellant's declaration was supported by additional evidence in the form of declarations from employees of a company verifying that he would have either been hired or at least seriously considered for employment had he been able to produce a discharge document from the military. *Jones,* 61 M.J. at 83; *see also United States v. Dunbar,* 31 M.J. 70, 73 (C.M.A.1990)("relief may not be predicated upon claims of prejudice that are unverified and un-

verifiable. The burden rests with appellant."). In this case, the appellant's affidavit is not supported by any additional evidence from outside employers or other personnel that corroborates his claims of lost employment opportunities and income. *See United States v. Gosser,* 64 M.J. 93, 98 (C.A.A.F.2006). Moreover, we find the appellant's affidavit lacking in sufficient detail in order for us to hold the Government accountable for verifying or rebutting the appellant's claims.

the substantial rights of the appellant. Art. 59(a), UCMJ, 10 U.S.C. § 859(a). Such a conclusion "must overcome the generally applied waiver of the factual issue of guilt inherent in voluntary pleas of guilty." *United States v. Dawson*, 50 M.J. 599, 601 (N.M.Ct.Crim.App.1999); *see also* R.C.M. 910(j).

Our analysis of the appellant's guilty plea to the sole specification under the Additional Charge begins with the text of the federal statute, 26 U.S.C. § 5861(d), which the Government charged under Article 134, UCMJ. Section 5861(d) makes it unlawful to "receive or possess a firearm which is not registered ... in the National Firearms Registration and Transfer Record." The definition of "firearm" is set forth in 26 U.S.C. § 5845(a). The definition lists many types of weapons including shotguns, rifles, machine guns, silencers, and destructive devices. *Id.* For purposes of the appellant's case, our focus is upon the term "destructive device" which is defined in § 5845(f) as follows:

> The term "destructive device" means (1) any explosive, incendiary, or poison gas (A) bomb, (B) grenade, (C) rocket having a propellent charge of more than four ounces, (D) missile having an explosive or incendiary charge of more than one-quarter ounce, (E) mine, or (F) similar device; (2) any type of weapon by whatever name known which will, or which may be readily converted to, expel a projectile by the action of an explosive or other propellant, the barrel or barrels of which have a bore of more than one-half inch in diameter, except a shotgun or shotgun shell which the Secretary finds is generally recognized as particularly suitable for sporting purposes; and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraphs (1) and (2) and from which a destructive device may be readily assembled. **The term "destructive device" shall not include any device which is neither designed nor redesigned for use as a weapon;** any device, although originally designed for use as a weapon, which is redesigned for use as a signaling, pyrotechnic, line throwing, safety, or similar device; surplus ordnance sold, loaned, or given by the Secretary of the Army pursuant to the provisions of section 4684(2), 4685, or 4686 of title 10 of the United States Code; or any other device which the Secretary finds is not likely to be used as a weapon, or is an antique or is a rifle which the owner intends to use solely for sporting purposes.

26 U.S.C. § 5845(f)(emphasis added). Notable is the language, highlighted above, that specifically excludes from the "destructive device" classification, "any device which is neither designed nor redesigned for use as a weapon." *Id.; United States v. Johnson*, 152 F.3d 618, 623 (7th Cir.1998)(the subsection contains an affirmative defense: The term destructive device does not include any device that is not designed for use as a weapon).[3] This statutory definition is critical in the appellant's case. The importance is explained by the Eleventh Circuit as follows:

> Thus, a device that explodes is not covered by the statute merely because it explodes. Statutory coverage depends upon proof that a device is an explosive *plus* proof that it was designed as a weapon. No explosive can constitute a destructive device within the meaning of the statute unless it has this "plus" factor. Thus ... [a] device is a "destructive device" within the meaning [of] the statute if, and only if, it was designed for use as a weapon.

*United States v. Hammond*, 371 F.3d 776, 780 (11th Cir.2004)(emphasis in original)(citing *United States v. Copus*, 93 F.3d 269, 274 (7th Cir.1996) and *United States v. Reindeau*, 947 F.2d 32, 36 (2d Cir.1991)). With this framework, we now turn to the specific facts of the appellant's case to determine if his guilty plea to possession of unregistered M80 firecrackers is sufficient to support a conviction for possession of a "firearm," more specifically a "destructive device," under the relevant statute.

---

**3.** We do not adopt the 7th Circuit's assertion that the appellant must assert this as an "affirmative defense."

We initially note that the military judge explained the elements of the Additional Charge to the appellant and provided the applicable definitions. However, aside from reciting the definition of destructive device, there was no further explanation of the phrase "for use as a weapon" under this definition in order to support a conviction under this statute. During the providence inquiry on the Additional Charge, the appellant admitted that he possessed four M80 firecrackers at his home in Oceanside, California during the time period charged and that the M80s were not registered. He described the M80s as "red in color, probably a half inch in diameter and a couple inches long ... [t]hey have a type of fuse to ignite it with, sir." Record at 39. The appellant further admitted that he believed the M80s constituted a "destructive device" as defined under the statute. However, there was no discussion or inquiry concerning whether these M80s were designed for use as a weapon or merely for recreational purposes.

The military judge recognized a potential problem with the Additional Charge and heard argument from counsel specifically on the issue of whether an M80 can qualify as a firearm or destructive device. However, there was no discussion or inquiry regarding whether the M80s were designed for use as a weapon.[4]

We conclude that the military judge failed to obtain admissions or evidence sufficient to satisfy this court that the appellant's M80s were designed for use as a weapon as required by the statutory definition of "destructive device" and by the decisions of at least three federal circuit courts. 26 U.S.C. § 5845(f); *Hammond*, 371 F.3d at 780; *Copus*, 93 F.3d at 274; *Reindeau*, 947 F.2d at 36. We need not resolve the ultimate question whether M80 firecrackers constitute a "destructive device" under the statutory definition. Our holding is limited to requiring that in order to support a conviction under 26 U.S.C. § 5861(d), military judges must inform the accused and obtain admissions establishing that the alleged unregistered

firearm, in this case M80 firecrackers, was designed for use as a weapon. Based upon this record, we are unable to independently determine whether the M80s were designed or redesigned for use as a weapon or whether they fall outside the statutory definition of "destructive device." *See Johnson*, 152 F.3d at 627 (recognizing that "firecrackers [have] a useful social and commercial purpose" that do not constitute a destructive device).

Our concerns regarding whether the M80s were designed for use as a weapon is bolstered by the legislative history behind the statute which makes clear that it was part of "Congress' continuing effort to reduce the number of homicides and other violent crime that has plagued the Nation." *Johnson*, 152 F.3d at 624 (citations omitted). Thus, it is evident to us that criminalizing the possession of certain types of unregistered destructive devices was intended, at least in part, to curtail the violence caused by these devices when they are used as a weapon. Without any admission or inquiry on the record indicating that the M80s were designed for use as a weapon, the appellant's plea under the Additional Charge is improvident. Accordingly, we will set aside and dismiss the Additional Charge and its specification in our decretal paragraph.

### Sentence Reassessment

We have reassessed the sentence in accordance with the principles of *United States v. Moffeit*, 63 M.J. 40 (C.A.A.F.2006), *United States v. Cook*, 48 M.J. 434 (C.A.A.F.1998), *United States v. Peoples*, 29 M.J. 426, 428 (C.M.A.1990), and *United States v. Sales*, 22 M.J. 305, 307–08 (C.M.A.1986). Having done so, we are convinced that the sentence announced by the military judge is no greater than that which would have been imposed in the absence of the prejudicial error. The crimes of which the appellant stands convicted, following our corrective action, are serious. Stealing military property in the form of an M16 rifle from the range and then taking affirmative steps to transport the

---

4. Both parties agreed that the appellant's unlawful possession of the M16 rifle (a fact that supported the two other charges) should not be considered as an alternative basis for supporting a conviction on the Additional Charge. Record at 45–46. Therefore, the military judge's focus was on the M80s and whether they satisfied the relevant statutory definition.

weapon to the appellant's home of record are not minor offenses by our measure. Aggravating this conduct is the fact that the appellant was previously convicted at summary court-martial of wrongful appropriation of military gear. Accordingly, we determine the sentence as awarded remains appropriate in this case.

### Conclusion

Accordingly, we affirm the findings of guilty to Charge I and its specification, and Charge II and Specification 3 thereunder. The findings of guilty of the Additional Charge and its specification are set aside and the Additional Charge and its specification are dismissed. Based upon our finding of a due process violation, we affirm only that portion of the approved sentence that extends to a bad-conduct discharge, forfeiture of all pay and allowances, reduction to pay grade E–1, and confinement for 12 months.

Chief Judge ROLPH and Senior Judge WAGNER concur.

Senior Judge WAGNER participated in the decision of this case prior to detaching from the court.